Cheshire
No. 6467

RIVERVIEW PARK, INC. & GATEWAY EQUIPMENT CO., INC.

v.

TOWN OF HINSDALE

December 28, 1973

*Cristiano & Kromphold* and *Douglas Green (Mr. Green* orally) for plaintiff Riverview Park, Inc.

*Shortlidge & Trombly (Mr. R. J. Shortlidge* and *Mr. Arthur L. Trombly* orally) for plaintiff Gateway Equipment Co., Inc.

*Howard B. Lane* and *McLane, Carleton, Graf, Greene & Brown (Mr. Arthur A. Greene, Jr.,* orally) for defendant.

DUNCAN, J. Appeal by defendant town of Hinsdale from a decree of the Superior Court (*Loughlin,* J.), granting separate petitions for declaratory judgment brought by plaintiffs Riverview Park, Inc. and Gateway Equipment Co. and consolidated for trial because identical legal questions were involved. Each plaintiff sought by its petition to have certain

ordinances of defendant town declared invalid as applied to its residential trailer park in Hinsdale.

Plaintiffs purchased the tracts in question prior to the enactment in 1968 of the initial Hinsdale ordinance regulating mobile homes. The first of the measures here in question appears in the zoning ordinance of April 5, 1970, which regulates the establishment and enlargement of trailer parks, and in particular provides in part as follows: "Any person operating a mobile home park at the time of adoption of this Ordinance shall be entitled to a special mobile home park permit upon the payment of an application fee of $100.00. Such permit shall be effective to authorize the continuing operation of the subject park *in substantially the same manner as existed at the date of adoption of this ordinance* .... A special mobile home park permit *shall not entitle the holder to enlarge or substantially alter his manner of operation of such prior existing mobile home park* without duly filing for a preliminary and thereafter final or definitive mobile home park permit as provided under this article" (emphasis added). Thus preexisting parks became valid nonconforming uses.

The second measure in question entitled "Ordinance for the Limitation of Mobile Homes in Hinsdale, New Hampshire" was enacted on June 20, 1970, and established a system for issuance of a maximum of 350 mobile home permits on a first-come first-served basis. If all 350 permits should be outstanding, a new mobile home could not legally be brought into the town until an existing one was removed. This ordinance was enacted under the general police power provisions of RSA 31:39 for the avowed purposes of protection of the town's water supply and school systems and promotion of the health, safety, and general welfare of its citizens.

The trial court ruled that "plaintiffs have a vested right to complete the projects in spite of the ... ordinances ...." and that each plaintiff may construct its 600 planned mobile home sites. Defendant excepted to this ruling on the ground that it was unsupported by the evidence and took various other exceptions.

Two interrelated issues are presented by this appeal. First, may the zoning ordinance restrict the growth of a park notwithstanding a preexisting plan to develop an entire tract

for mobile home sites. Second, may the town under the police power restrict the total number of trailer units to be located in the town.

The first issue was recently considered by this court in *Amherst v. Cadorette,* 113 N.H. 13, 300 A.2d 327 (1973). It was there held that the existence of some trailers in a park at the time of passage of a restrictive ordinance did not "confer as a matter of law, the right to place additional trailers on the tract... on the theory that 'pre-existing nonconforming use' is a quality of the entire tract... as distinguished from its use or the extent of its use". *Id.* at 14-15, 300 A.2d at 328. The same opinion also stated that "mere intention, however expressed, could not create vested rights to continue expansion except in accordance with restrictions imposed by the ordinance". *Id.* at 14, 300 A.2d at 328. The facts of the instant case require a like decision.

The record before us reveals no showing by plaintiffs of substantial sums spent in contemplation of expansion of their parks beyond the number of units presently in existence. *Piper v. Meredith,* 110 N.H. 291, 299, 266 A.2d 103, 109 (1970). Nearly all of the approximately $150,000 expended by Riverview and of the approximately $87,000 spent by Gateway was traced to the development of the roads, water lines, and other utilities serving the existing 156 and 60 sites, respectively. These improvements are conceded by the town to have been substantially or wholly completed when the April 1970 zoning ordinance was enacted. Creation of a vested right requires something more than the relatively small sums spent by these plaintiffs for engineering services, clearing, and utility extension in contemplation of expansion. *Id.* The ruling that the plaintiff had acquired a vested interest in the completion of 600 units was erroneous, and at odds with the established policy of limiting expansion and enlargment of nonconforming uses. *Amherst v. Cadorette,* 113 N.H. at 15, 300 A.2d at 329; *Flanagan v. Hollis,* 112 N.H. 222, 293 A.2d 328 (1972); *Wentworth Hotel, Inc. v. New Castle,* 112 N.H. 21, 287 A.2d 615 (1972); *Lachapelle v. Goffstown,* 107 N.H. 485, 225 A.2d 624 (1967).

We consider that the trial court was also in error in ruling that the plaintiffs were not subject to the ordinance adopted

in June 1970, requiring permits for the location and maintenance of mobile homes in the town, and limiting the number of such permits to be issued to 350. *Mobil Oil Corp. v. Keene,* 112 N.H. 155, 290 A.2d 628 (1972). The ordinance entitled them to permits for the mobile homes in their parks at the time of passage of the ordinance. Unlike some towns, Hinsdale has not undertaken to regulate mobile homes by restricting their location to mobile home parks. *See Londonderry v. Faucher,* 112 N.H. 454, 299 A.2d 581 (1972); *Greenland v. Hussey,* 110 N.H. 269, 266 A.2d 122 (1970). Instead, it has undertaken to exercise control by means of a permit system, reinforced by a numerical limit of 350 permits. The use of permits has already been recognized here as a legitimate method of regulation where governed by standards relating to the advancement of health, safety, and general welfare. *New Boston v. Coombs,* 111 N.H. 359, 361, 284 A.2d 920, 922 (1971). The Hinsdale ordinance not only makes the issuance of permits dependent upon findings that the location and maintenance of mobile homes will be in compliance with the town zoning ordinance, but limits the number of permits to be issued.

On the evidence before the trial court, the numerical limit adopted was not shown to be arbitrary or unreasonable. *Flanagan v. Hollis,* 112 N.H. 222, 293 A.2d 328 (1972). There was evidence that when the ordinance was adopted there were less than 350 such homes within the town. It appeared that the population of the town according to the 1970 census was 3,276 and that there were 823 frame dwellings in the town. The town comprises twenty square miles of area, divided by "two dorsal fins" of uninhabitable mountain territory. There are seven mobile home parks in the town, including the two operated by the plaintiffs. The mobile home population is partially transient, major turnovers coinciding with the opening and closing of the racing season of the Hinsdale Raceway, or with the duration of construction projects in neighboring areas. Recent growth within the town has occasioned expansion of school facilities, and enlargement of the town water supply system which depends upon two driven wells and a storage standpipe and currently borders upon the inadequate.

It cannot fairly be said upon the evidence that the limitation on mobile homes in the town which the voters adopted was unreasonable in the light of existing conditions. *See Vickers v. Township Com. of Gloucester Tp.*, 37 N.J. 232, 181 A.2d 129 (1962). The ordinance adopted by Hinsdale in June 1970 is allied to the previously existing zoning ordinance not only by its requirement of compliance with that ordinance in the location and maintenance of permitted mobile homes, but also by its adoption of the zoning ordinance definition of what constitutes such a home, *viz:* "any vehicle or similar portable structure having no foundation other than wheels, jacks or skirtings and so used, designed or constructed as to permit its being used as a conveyance and as a dwelling . . . ." To what extent, if any, the provisions of the zoning ordinance authorizing the granting of variances as provided by RSA 31:72 may be said to override the 350 permit limit imposed by the ordinance of June 1970 is a question not presented by this transfer. The plaintiffs have argued that the June ordinance subjects them to hardship amounting to confiscation of their undeveloped property. The record however cannot be said to warrant a ruling that they are entitled as of right to add a thousand more mobile homes to those already located in the town of Hinsdale.

*Defendant's exceptions sustained; remanded.*

All concurred.