Merrimack
No. 6721

## The Village House, Inc.

v.

## Town of Loudon

January 31, 1974

*Cleveland, Waters & Bass* and *Michael C. Moyers (Mr. Moyers* orally) for the plaintiff.

*Upton, Sanders & Upton (Mr. J. Gilbert Upton* orally) for the defendant.

GRIMES, J. By declaratory judgment, plaintiff challenges the validity of an ordinance which prohibits the establishment of additional mobile home parks in the town of Loudon and the validity of a denial, pursuant to the ordinance, of a permit to construct such a park.

Plaintiff owns a 42-acre tract in Loudon which in July and August of 1970 was surveyed and divided into sites appropriate for mobile homes. Surveying cost the plaintiff $1,050. On September 29, 1970, the town posted a warrant for a special town meeting to decide, primarily, if the town would vote to prohibit the establishment of additional mobile home parks.

In early October plaintiff started grading operations, which cost $2,900, to prepare the land for the proposed park. On October 15, in compliance with an existing town ordinance, the plaintiff applied to the selectmen of the town for a permit to construct and operate the mobile home park. On October 21, the town voted, at the specially held meeting, to prohibit future parks and on November 16 the selectmen advised plaintiff that on the basis of the ordinance the requested permit was denied.

Loudon has never adopted a zoning ordinance in accordance with RSA ch. 31 though it has enacted a building code which applies to mobile homes. The town already has three mobile home parks with spaces for 260 homes. Of the 128 mobile homes located in the town, 58 are located in these parks and 64 outside the parks. At the same special meeting, the town also passed an ordinance requiring all mobile homes to be located in approved mobile home parks. Loudon is a small town with a population of about 2,000 people and a total assessed value of buildings for the town of approximately $4,000,000, one-tenth of which is attributable to trailers and mobile homes. Plaintiff's park would add another 127 sites for mobile homes.

Plaintiff makes four arguments to challenge the ordinance and the denial of the permit. The most strenuously propounded of the four is that the town building code and the mobile home ordinances together constitute a comprehensive zoning plan which can be enacted only pursu-

ant to RSA 31:60-89 and not through the grant of police power to towns found in RSA 31:39. The building code provides for the following: Application for and issuance of permits to locate or erect a building or conduct a business; setback requirements of at least 10 feet from the road; minimum building size of 500 square feet of floor surface; minimum lot size of 15,000 square feet with minimum road frontage and lot depth of 100 feet and 150 feet, respectively; sanitary facilities to conform to State board of health regulations; application of the code to mobile homes and a minimum lot size of 7,500 square feet for same. The above-enumerated provisions with amendments amount to more than half the ordinances ever passed by the town of Loudon.

The issue of the extent of land use regulations which may be enacted by a town pursuant to the police power without having to comply with the zoning enabling act is considered in light of *Piper v. Meredith,* 110 N.H. 291, 266 A.2d 103 (1970), and *Bisson v. Milford,* 109 N.H. 287, 249 A.2d 688 (1969). *Piper* held that an ordinance regulating setback, space between buildings and height of buildings was a valid exercise of the police power of the town even though the purpose of the ordinance could have been achieved through the zoning enabling act found at RSA 31:60. *Bisson,* on the other hand, held that an ordinance regulating the use of buildings, size and percentage occupied of lots, population density in the town, and creating districts for effecting these rules amounted to "comprehensive regulations" which could be legally enacted only in compliance with the zoning act.

To decide whether this case comes within the sphere of *Piper* or of *Bisson,* the court must consider the nature and purpose of the regulations, their relationship if any to a general plan of development, their comprehensiveness, their effect on property values and property rights, and the situation surrounding their passage. *Piper v. Meredith,* 110 N.H. 291, 266 A.2d 103 (1970); 8 E. McQuillin, Municipal Corporations § 25.10 (1965 rev. vol.).

In this case, the ordinances were enacted piecemeal over a period of thirteen years. The mobile home park ordi-

nance itself was a simple, direct and narrow addition to the ordinances in that it dealt solely with mobile homes. It apparently was not intended to be integrated into previous enactments as part of an over-all, regulatory scheme and apart from the banning of additional parks, no ordinance regulates the use of land or the types of structures placed on land. The building code is lenient and imposes on the right of property owners in only the most unobtrusive way. The handful of rules comprising the building code cannot be said, in either intention or effect, to be regulating land usage, construction of buildings or location of businesses in any "comprehensive" way so as to require compliance with RSA 31:60-89. *Piper v. Meredith,* 110 N.H. 291, 266 A.2d 103 (1970).

Plaintiff's second argument is that the trailer park ordinance is invalid as not reasonably serving a valid public purpose. But the regulation of mobile homes and reasonable limitations on their number have been held to be a proper exercise of the police power of a town. *Plainfield v. Hood,* 108 N.H. 502, 240 A.2d 60 (1968); *Riverview Park, Inc. v. Hinsdale,* 113 N.H. 693, 313 A.2d 733 (1973). No restriction is placed on the expansion of the three mobile home parks already established in the town which can accommodate the needs of mobile homeowners for the foreseeable future as space is already available for an additional 202 mobile homes.

Plaintiff's third argument is that the absolute prohibition of an otherwise lawful use of property is an unconstitutional taking of property without due process of law. Any regulation of property which diminishes the value or use of the property is, to the extent of the diminution, a taking but it is not thereby an unconstitutional or compensable taking. *R.A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 289 A.2d 646 (1972). The difference between a noncompensable, reasonable exercise of the police power and an unconstitutional taking of property is one of degree of harm to the property owner. To be compensable, the damage must be substantial and amount to "'severe interferences which are tantamount to deprivations of use or enjoyment of property'". *Stevens v. Salisbury,* 240 Md. 556,

567, 214 A.2d 775, 781 (1965). Plaintiff makes no claim his property is not suitable for other purposes nor does he argue the extent of damage resulting from the restriction. The denial of a single use of property is not of itself a compensable taking.

Plaintiff's final argument is that the denial to plaintiff of the use of his land as a mobile home park coupled with the allowance of 202 additional mobile homes in the existing parks denies plaintiff the equal protection of the law. This argument weighs most heavily on ordinances which arbitrarily discriminate between businesses often with the effect, if not the intention, of restraining competition. *Consumers Gasoline Stations v. Pulaski,* 200 Tenn. 480, 292 S.W.2d 735 (1956). The restraining of conditions within their existing extent is not arbitrary, discriminatory or unreasonable in the situation presented by this case. *Stone v. Cray,* 89 N.H. 483, 485, 200 A. 517, 520 (1938).

The ordinance is a valid exercise of the police power and the denial of plaintiff's permit was proper.

*Judgment for defendant.*

All concurred.