Hillsborough
No. 6887

ALBERT GOSSELIN & *a.* v. CITY OF NASHUA & *a.*

June 28, 1974

*Kronish, Lieb, Shainswit, Weiner & Hellman* and *David N. Ellenhorn* (of New York) and *Gerald R. Prunier (Mr. Ellenhorn* and *Mr. Prunier* orally) for the plaintiffs.

*H. Philip Howorth,* city corporation counsel, by brief and orally, for the city of Nashua.

GRIFFITH, J. These cases arise from two actions brought by plaintiffs, Bentley Properties, Incorporated and cer-

tain landowners from whom Bentley purchased land options, against the city of Nashua, its city clerk, and its planning board after the latter had rejected a site plan for a proposed shopping center, at that time a permitted use, on Amherst Street in Nashua. The two actions were tried together. While the trial court found against plaintiffs on their petition for certiorari on the merits of the planning board's decision, it found in their favor on their petition for a writ of mandamus. Initially the trial court ordered approval of plaintiffs' plan as amended, but after a rehearing it modified the decree issuing a writ of mandamus ordering approval of plan 7. Plaintiffs took no appeal from the trial court's findings in the petition for certiorari, conceding during oral argument that determination of the petition for mandamus by this court would render the other case moot.

Subsequent to the hearing on the merits in the superior court, but before the court's decision, the city of Nashua amended its zoning ordinance, effective January 1, 1974, and the property in question was rezoned. Under the new ordinance, a shopping center is no longer a permitted use on the greater portion of the proposed site. The parties have agreed that the issue of whether the zoning amendment bars construction of the shopping center despite the court's decree mandating approval of plaintiffs' site plan, may be decided by this court in the present case.

Defendants seasonably excepted to the findings and decree of the trial court, including specifically the rulings on both plaintiffs' and defendants' requests for findings of fact and rulings of law and the ruling of the court modifying the initial decree. All questions of law raised by defendants' exceptions, the agreed statement of facts and the Nashua zoning amendment were reserved and transferred by the Trial Court, *Johnson,* J.

In early 1973, plaintiff Bentley acquired purchase options from the owners of the land in question. Bentley proceeded to prepare a preliminary site plan (plan 1) which was submitted for approval to the Nashua City Planning Board on May 31, 1973. While the planning board failed to place the plan on its agenda for its next scheduled meeting (see RSA 36:23 and Revised Ordinances of Nashua § 3842), it met with Ben-

tley's architects, explained why the plan was unacceptable and suggested revisions.

Plaintiffs revised their plan in accordance with the board's suggestions, submitting a second plan (plan 2) for approval on July 1, 1973. Negotiations between plaintiffs and the planning board continued with the board requesting additional minor revisions on various submitted plans and with the plaintiffs attempting to make the revisions and providing additional information that the board requested. Between August 20 and October 4, plaintiffs submitted five (5) additional plans (plans 3-7) to the board for its approval. On October 4, 1973, plaintiffs submitted plan 7 which was voted on and rejected that same day by the planning board.

In November 1973, plaintiffs filed a petition for a writ of mandamus against Lionel Guilbert, clerk of the city of Nashua, and the Nashua City Planning Board, to compel them to issue a certificate of approval of their site plan pursuant to RSA 36:23 and Revised Ordinances of Nashua § 3842, due to the planning board's failure to approve or disapprove the submitted plan within prescribed time limits. RSA 36:23 and Revised Ordinances of Nashua § 3842 are substantially the same except that the former provides for approval of a plan on demand if the planning board fails to approve or disapprove of the plan within ninety days while the latter imposes a thirty-day action requirement on the board. RSA 36:23 reads in pertinent part as follows: "The planning board shall place on its agenda for consideration any plat submitted to it within thirty days and shall act to approve or disapprove thereof within ninety days; provided, that the planning board may apply to the selectmen or city council for an extension not to exceed an additional ninety days before acting to approve or disapprove, otherwise such plat shall be deemed to have been approved, and the certificate of the municipality, as to the date of submission of the plat for approval and the failure to take action thereon within such time, shall be issued on demand and shall be sufficient in lieu of the written indorsement or other evidence of approval herein required; provided, however, that the applicant for the board's approval may waive this requirement and consent to an extension of such period."

Defendants assert that the trial court erred in issuing the writ of mandamus, because plaintiffs waived their rights to the statutory time limit within which the board was required to act by submitting seven (7) separate plans for approval. The trial court found as a matter of law that plaintiffs did not waive their statutory rights to have the board act on their initial plan, and that all subsequent submissions to the board "constitute refinements of the concept embodied in the initial submission and do not constitute multiple submissions." While defendants concede that if it is found plaintiffs did not waive the statutory time limit, they are entitled to a decree ordering approval of plan 1, they argue that each plan is a separate submission and mandamus cannot properly issue as to plan 7, because the board rejected that plan on the day it was submitted.

Plaintiffs argue that since they were entitled to a certificate of approval of their site plan by August 31, 1973, at the very latest, the amendment to title 14 of the Revised Ordinances of Nashua, effective January 1, 1974, should not be applied to prohibit construction of the proposed shopping center. They assert that since they have expended in excess of $100,000 in good faith reliance on the absence of any regulation prohibiting the proposed use, they have acquired a vested right to complete the shopping center despite the subsequent adoption of an ordinance prohibiting the same.

An existing classification of property confers no vested right on an owner in itself "as all property is held in subordination to the police power of the municipality." *R.A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 110, 289 A.2d 646, 648 (1972); *Brady v. Keene,* 90 N.H. 99, 4 A.2d 658 (1939); *Village House, Inc. v. Loudon,* 114 N.H. 76, 314 A.2d 635 (1974). The present case raises the question whether vested rights may accrue when a subdivision approval is applied for and not granted which is similar to the more common situation where a building permit has already issued and then is subsequently revoked. *Winn v. Corporation,* 100 N.H. 280, 124 A.2d 211 (1956). In both situations "the governing principles are substantially similar" (*R.A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 110, 289 A.2d 646, 648 (1972)); and "no greater right should accrue to plaintiff [Bentley]

under the subdivision ordinance than is accorded a land-owner who has been issued a building permit." *Id.* In these situations, the general rule and the rule in New Hampshire has been that "an owner, who, relying in good faith on the absence of any regulation which would prohibit his proposed project, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both, acquires a vested right to complete his project in spite of the subsequent adoption of an ordinance prohibiting the same." *Piper v. Meredith,* 110 N.H. 291, 299, 266 A.2d 103, 109 (1970); *R.A. Vachon & Sons, Inc. v. Concord,* 112 N.H. 107, 110-11, 289 A.2d 646, 648 (1972); *Winn v. Corporation,* 100 N.H. 280, 281, 124 A.2d 211, 213 (1956); A.L.I. Model Land Development Code § 2-309 (Proposed Official Draft No. 1, 1974); Annot., 49 A.L.R.3d 13, 26-32 (1973).

Plaintiffs argue that while the total contractual option price for the land, determined in reliance upon the then existing zoning law, was $330,000, the new zoning ordinance has reduced the value of the property and has created a substantial unrecoverable loss. Such an argument does not support a conclusion that vested rights have accrued. It is well established in this State that "money spent for the acquisition of the property itself is properly excluded from consideration." *R.A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 111, 289 A.2d 646, 649 (1972); *Piper v. Meredith,* 110 N.H. 291, 299, 266 A.2d 103, 109 (1970).

While Bentley incurred other substantial liabilities in excess of $100,000 in the areas of planning, architecture and engineering, these were related to the site plan application process and were not directly related to the actual construction of the proposed shopping center. These types of preliminary expenditures do not establish vested rights. *Riverview Park, Inc. v. Hinsdale,* 113 N.H. 693, 313 A.2d 733 (1973); *Ross v. Montgomery County,* 252 Md. 497, 250 A.2d 635 (1969). "It is, rather, the amount of money spent on improvements to change the use of the land in a tangible way which ... create[s] a vested right which cannot be affected by the enactment of a restrictive ordinance." *Piper v. Meredith,* 110 N.H. 291, 299, 266 A.2d 103, 109 (1970).

Despite our holding that Bentley has not acquired a vested right to complete the proposed shopping center, its allegation that the planning board arbitrarily delayed in acting upon its application for site plan approval raises the issue of whether the city of Nashua is estopped to prevent its construction. Although it has been observed that success on these or other equitable grounds has been infrequent both in this State and in most other jurisdictions (*see R.A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 110, 289 A.2d 646, 648 (1972)), we recognize that there may be situations where inequitable conduct by a municipal authority will preclude it from enforcing a restrictive ordinance against a private landowner. *See Humble Oil & Refining Co. v. Wahner,* 25 Wis. 2d 1, 130 N.W.2d 304 (1964). *See also* Heeter, *Zoning Estoppel,* Urban L. Ann. 63, 70-73 (1971). In this case, however, the trial court found on the evidence that the planning board acted in good faith in its negotiations with Bentley and there is no indication that the zoning amendment was unreasonable or passed for the purpose of thwarting the proposed development. *See Village House, Inc. v. Loudon,* 114 N.H. 76, 314 A.2d 635 (1974). Under these circumstances we find no support for a holding of estoppel. *See Richmond Corp. v. Board of County Comm'rs,* 254 Md. 244, 256, 255 A.2d 398, 407 (1969).

It is unnecessary to decide whether the decree of mandamus was properly granted. Even if a certificate of approval was mandated, the change in the ordinance would render the order inoperative in view of our holding that plaintiffs have acquired no vested rights.

*Judgment for defendants.*

All concurred.