Rockingham
No. 78-074

RICHARD BECK

v.

THE TOWN OF RAYMOND

November 17, 1978

*Casassa, Mulherrin & Ryan*, of Hampton (*John J. Ryan* orally), for the plaintiff.

*Kearns & Colliander*, of Exeter (*Peter F. Kearns*), for the defendant.

*Craig, Wenners, Craig & McDowell*, of Manchester (*William H. Craig* orally), for the intervenor New Hampshire Home Builders Association.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*E. Blake Redding* orally), for amicus curiae town of Auburn.

*Duane Searles*, member of the Virginia Bar, orally for amicus curiae National Home Builders Association.

*Brown and Nixon P.A.*, of Manchester, by brief, for amici curiae towns of Hollis and Hooksett.

BOIS, J. The plaintiff in this case challenges the validity and application of the town of Raymond's "slow-growth" ordinances. After

he was denied a building permit on the basis of those ordinances, the plaintiff brought a petition for declaratory relief and an application for a writ of mandamus. The Court (*Mullavey*, J.) denied relief, and reserved and transferred the plaintiff's exceptions. We reverse.

On March 8, 1977, at the annual town meeting, Raymond passed an amendment to its zoning ordinance which limits the availability of residential building permits. It sets the following ceiling on the number of building permits that landowners may be issued in each "building year," which runs from April 1 to March 31: four permits per year for those who own fifty or more acres of land; three permits per year for those who own between twenty-five and fifty acres; two permits per year for those who own between ten and twenty-five acres; and one permit per year for those who own ten or fewer acres of land. The ordinance does not limit the transferability of land; however, a transferee who desires a building permit must either acquire his transferor's right to a permit or wait an entire building-year cycle before he may obtain one in his own right. Thus a person purchasing land on April 2 of any year might be required to wait two years to develop his land for residential use.

On March 12, 1977, a general ordinance was also passed at the town meeting. This ordinance, which was inserted in the town warrant by a voters' petition, is substantially identical to the zoning ordinance.

The plaintiff, the developer of the Fordway Brook Acres subdivision in Raymond, applied for five building permits. He was issued only four, whereupon he brought this action. After a hearing, the trial court upheld the denial of a fifth permit. The court ruled that the denial of the permit was authorized by the general ordinance, which it held was a valid exercise of the police power under RSA 31:39. The general ordinance was found to be a response to problems in Raymond caused by rapid population growth. Raymond's population increased from 3,000 to 4,700 in the period from 1970 to 1977 or an increase of 64% in seven years. In particular, the court found that the ordinance "is an attempt to limit the growth of the town in order to prevent overcrowding in its schools and the overburdening of its taxpayers."

The paramount issue in the case at bar is whether the general ordinance is a valid exercise of the police power delegated to a municipality pursuant to RSA 31:39. We hold that it is not.

All parties agree that the purpose of the Raymond ordinance is to restrain growth. Authority to enact land use regulations for the

purpose of restricting growth is embodied in the power to zone under RSA 31:60. The law is unclear, however, concerning the extent to which towns may regulate growth through land use measures pursuant to their general police powers under RSA 31:39.

■ Regulating and restricting the density of population are standard objectives of the Standard State Zoning Enabling Act, 1 R. Anderson, American Law of Zoning § 7.06 (2d ed. 1976), and are expressly delegated to a town in New Hampshire pursuant to the power to zone, RSA 31:60:

> For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of any city or town is empowered to regulate and restrict the height . . . and size of buildings, lot sizes, the percentage of lot that may be occupied, the size of yards . . . and other open spaces, the *density* of population and the location and use of buildings . . . and land for . . . residence or other purposes. (Emphasis added.)

RSA 31:62 delineates the "purposes in view" of the zoning power, and states in part:

> Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets . . . to prevent the overcrowding of land; to avoid undue concentration of population. . . .

■■ The traditional concept of zoning focused on the regulation of the use of land and buildings according to districts or well-defined areas, 8 E. McQuillin, Municipal Corporations § 25.53 (3d ed. 1976); and the adoption of zoning regulations for the stated purpose of restricted growth is a logical extension of that concept. The power to restrict and regulate population density necessarily implies the authority to direct and control population growth. *See Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 389–390 (1926); *Golden v. Planning Bd.*, 30 N.Y.2d 359, 371, 285 N.E.2d 291, 297, 334 N.Y.S.2d 138, 146, *appeal dismissed*, 409 U.S. 1003 (1972). *See also Town of Plainfield v. Hood*, 108 N.H. 502, 240 A.2d 60 (1968) (ordinance need not create defined areas to be considered zoning ordinance.) When towns properly exercise the zoning power delegated to them by the legislature, RSA 31:60–89, they may adopt reasonable time controls on population growth. "Comprehensive planning with a solid scientific, statistical basis is the key element in land use regulation in New Hampshire." *Patenaude v. Town of Meredith*, 118 N.H. 616, 392 A.2d 582 (1978).

The plaintiff argues that Raymond's "slow growth" general ordinance is in fact a zoning ordinance, valid only if it complies with the statutory zoning enabling act. RSA 31:60–89. He argues that the general ordinance, enacted pursuant to RSA 31:39, is therefore invalid. He concludes that the trial court's finding that "the plaintiff [had] engaged in active and substantial development . . . within twelve months of the recording of the [subdivision] plans," brings him within the protection of the "grand-father clause" exemption of RSA 36:24-a (Supp. 1977) from subsequent changes in the zoning ordinances enacted pursuant to RSA 31:60–89. We adopt the plaintiff's reasoning.

RSA 36:24-a, as it read at the time the ordinances in question were enacted, provided that:

Every plat approved by the planning board and properly recorded in the registry of deeds shall be exempt from all subsequent changes in subdivision regulations and zoning ordinances adopted by any city or town, except those regulations and zoning ordinances which expressly protect public health standards such as water quality and sewage treatment requirements, for a period of three years after the date of recording subject to each of the following conditions:

I. Active and substantial development or building shall have commenced on the site by the owner or his successor in interest in accordance with the approved plat within twelve months after the date of approval. . . .

The defendant advances two arguments against the application of RSA 36:24-a to the Fordway Brook Acres subdivision. First, the town claims that the "public health" exception in the statute applies to the town's limited-growth scheme. This argument is unpersuasive. Neither ordinance in question concerns water quality or sewage treatment matters. The town contends that the "public health" exception should be read to include ordinances designed to curb overcrowding in schools and a rising incidence in crime. We disagree; a public health exception of this breadth would be applied more often than the underlying rule.

The town also argues that even if the plaintiff is exempt from the zoning ordinance under the grand-father clause, he is not exempt from restrictions imposed by the general ordinance enacted pursuant to the police power. RSA 31:39 empowers towns to pass bylaws "for making and ordering their prudential affairs." This court has held that a town may regulate land use to some extent without complying

with the procedural requisites of RSA 31:60–89. These statutory provisions grant authority to make bylaws which generally fall into the category of health, welfare, and safety. *Piper v. Meredith*, 110 N.H. 291, 266 A.2d 103 (1970); *State v. Zetterberg*, 109 N.H. 126, 244 A.2d 188 (1968); *State v. Jenkins*, 102 N.H. 545, 162 A.2d 613 (1960).

This court has allowed municipalities fairly wide latitude in using their general police power to develop limited types of land use controls. An ordinance regulating setbacks, space between buildings, and height of buildings has been held to be a valid exercise of the general police power, even though the purpose of the ordinance could have been achieved by ordinances created pursuant to the zoning enabling act. *Piper v. Meredith*, 110 N.H. 291, 266 A.2d 103 (1970). A town ordinance prohibiting the erection of buildings within one-quarter mile of the town common for the purpose of preserving the "atmosphere" of the town has also been held valid under RSA 31:39. *Town of Deering v. Tibbetts*, 105 N.H. 481, 202 A.2d 232 (1964). *See also Village House, Inc. v. Town of Loudon*, 114 N.H. 76, 314 A.2d 635 (1974) (upheld an ordinance prohibiting the establishment of additional mobile home parks in town where three already existed); *Town of Weare v. Stone*, 114 N.H. 80, 314 A.2d 638 (1974) (upheld an ordinance locating mobile homes within duly licensed mobile home parks); *Riverview Park, Inc. v. Town of Hinsdale*, 113 N.H. 693, 313 A.2d 733 (1973) (upheld an ordinance establishing a limit on the number of mobile home permits issued); *Town of New Boston v. Coombs*, 111 N.H. 359, 284 A.2d 920 (1971) (upheld an ordinance regulating the location of mobile homes); *State v. Zetterberg*, 109 N.H. 126, 244 A.2d 188 (1968) (upheld an ordinance regulating surfing on ocean beaches as a safety measure); *Town of Jaffrey v. Heffernan*, 104 N.H. 249, 183 A.2d 246 (1962) (upheld a setback ordinance which did not comply with statutory requirements for the adoption of a zoning ordinance).

Nevertheless, the power to enact land use measures under RSA 31:39 is not unlimited. This court has held that an ordinance regulating the use of buildings, size and percentage of lots that may be occupied, population density in the town, and creating districts for achieving these purposes amounted to "comprehensive regulations" which could be legally enacted only in compliance with the zoning enabling act. *Bisson v. Town of Milford*, 109 N.H. 287, 249 A.2d 688 (1969); *see* RSA 31:60. We considered the issue of the extent to which land use regulations may be enacted by a town pursuant to RSA 31:39 without compliance with the requirements of the

zoning enabling act in *Village House, Inc. v. Town of Loudon*, 114 N.H. 76, 314 A.2d 635 (1974).

> To decide whether this case comes within the sphere of *Piper* or of *Bisson*, the court must consider the nature and purpose of the regulations, their relationship if any to a general plan of development, their comprehensiveness, their effect on property values and property rights, and the situation surrounding their passage.

*Id.* at 78, 314 A.2d at 636–37.

We held in the *Village House, Inc.* case that the town building code and mobile home ordinances were not enacted "as part of an over-all regulatory scheme . . . regulating land usage, construction of buildings or location of businesses in any 'comprehensive' way so as to require compliance with RSA 31:60–89." *Id.* at 79, 314 A.2d at 637.

The Raymond general ordinance comes within the sphere of *Bisson*, rather than *Village House, Inc.*, because "[i]t apparently was not intended to be integrated into previous enactments as part of an over-all, regulatory scheme." *Id.* at 79, 314 A.2d at 637. The ordinance establishes a definite and detailed scheme of control that substantially restricts the use of land throughout the town. The general ordinance is not an emergency measure.

> The Raymond Planning Board . . . had been considering the problems created by rapid growth for several years . . . A moratorium article was placed on the ballot by citizen's petition at the 1974 town meeting. This article was defeated.

When legislation attempts to control population growth through definite and detailed control of land development, it must be enacted in accordance with the zoning statute. *See Rayco Inv. Co. v. Bd. of Selectmen*, 368 Mass. 385, 331 N.E.2d 910 (1975) (a zoning enabling act's protections against abuse should not be circumvented by use of the general police power); 1 R. Anderson, American Law of Zoning 2d § 5.21, at 331 (2d ed. 1976); 1 A. Rathkopf, The Law of Zoning and Planning § 2.02 [2] (4th ed. 1975); 1 N.H. Office of Comprehensive Planning, Growth Management, A Handbook on Land Use Controls of New Hampshire Municipalities 41 (1977) (growth controls enacted via RSA 31:39 instead of RSA 31:60–89 "lack the broad scope of power and continuity which is essential to long-range planning").

We hold that the Raymond general ordinance is so "comprehensive" as to require compliance with RSA 31:60–89, and is an

invalid exercise of the police power delegated to a municipality pursuant to RSA 31:39. Plaintiff is thus protected by the RSA 36:24-a exemption as it applies to zoning ordinances. He is, therefore, not subject to the permit limitation contained in the valid zoning ordinance adopted March 8, 1977; and he should be issued a permit to be exercised in compliance with the conditions imposed by subsections I–III of the latter statute. *See Gosselin v. City of Nashua*, 114 N.H. 447, 451, 321 A.2d 593, 596 (1974).

■ We hold that the general police power delegated to a municipality pursuant to RSA 31:39 may not be used as a usual and expedient mechanism for effecting zoning regulations which would otherwise fall within the scope of RSA 31:60–89. When such ordinances become a substitute for a zoning plan, the purpose and effect of the zoning enabling legislation is defeated. "Such controls cannot be used in the development of a broad comprehensive plan, and they lack the broad scope of power and continuity which is essential to long-range planning." 1 N.H. Office of Comprehensive Planning, Growth Management: A Handbook on Land Use Controls for New Hampshire Municipalities 41 (1977).

■ Zoning is a legislative tool that enables governmental bodies to meet more effectively the demands of evolving and growing communities. *Const. Indus. Ass'n. v. City of Petaluma*, 522 F.2d 897 (9th Cir. 1975), *cert. denied*, 424 U.S. 934 (1976). A carefully designed community land use plan is the basis for land use control. It provides a community with distinct, articulated goals. Under RSA 31:62, towns may "facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements;" may "prevent the overcrowding of land;" may "avoid undue concentration of population," etc. *See Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974); *Golden v. Planning Bd.*, 30 N.Y.2d 359, 285 N.E.2d 291, 334 N.Y.S.2d 138, *appeal dismissed*, 409 U.S. 1003 (1972). *See generally Const. Indus. v. City of Petaluma*, 522 F.2d 897 (9th Cir. 1975); *Steel Hill Dev. Inc. v. Town of Sanbornton*, 469 F.2d 956 (1st Cir. 1972); *Associated Home Builders v. City of Livermore*, 18 Cal. 3d 582, 557 P.2d 473, 135 Cal. Rptr. 41 (1976); 2 R. Anderson, American Law of Zoning 2d § 10.01 (1976). Growth controls must, however, be reasonable and nondiscriminatory. They should be the product of careful study and should be reexamined constantly with a view toward relaxing or ending them. *See Patenaude v. Meredith*, 118 N.H. 616, 392 A.2d 582 (1978); *Steel Hill Dev. v. Town of Sanbornton supra*; Hoffman & Killefer, *So You'*

*Want to Move to the Suburbs: Policy Formulation and the Constitutionality of Growth-Restricting Plans,* 3 Hastings Const. L.Q. 803, 845–47 (1976). Good faith efforts to increase the capacity of municipal services should accompany growth controls. *See Constr. Indus. Ass'n. v. City of Petaluma supra; Golden v. Planning Bd. supra.* They must not be parochial; that is, controls must not be imposed simply to exclude outsiders, *see Steel Hill Dev. v. Town of Sanbornton supra; Nat'l Land and Inv. Co. v. Kohn,* 419 Pa. 504, 215 A.2d 597 (1965), especially outsiders of any disadvantaged social or economic group, *see S. Burlington County N.A.A.C.P. v. Township of Mount Laurel,* 67 N.J. 151, 336 A.2d 713, *appeal dismissed,* 423 U.S. 808 (1975).

This zoning ordinance as a *permanent* enactment is of doubtful validity. It is not based on any study, and is not part of a comprehensive plan. Its apparent primary purpose is to prevent the entrance of newcomers in order to avoid burdens upon the public services and facilities. This alone is not a valid public purpose. Moreover the great bulk of such expenses as sewer and water lines and streets are usually forced upon the developer and in turn upon the ultimate homeowners.

 Towns may not refuse to confront the future by building a moat around themselves and pulling up the drawbridge. They must develop plans to insure that municipal services, which normal growth will require, will be provided for in an orderly and rational manner. Any limitations on expansion must not unreasonably restrict normal growth. This is not to say that some reasonable limitations on growth based upon the use of master or comprehensive planning are barred.

 At this time and under the circumstances of this case we uphold the validity of this zoning ordinance only as a *temporary* emergency measure to allow the town two years at most to develop a master or comprehensive plan for phasing in growth and providing therefor.

 An ideal solution to the problem of parochial growth restrictions is effective regional or state-wide land-use planning. Such planning could coordinate responses to the population escalation in New Hampshire, thereby eliminating the present disparities existing between towns, and insuring that each municipality bears its fair share of the burden of increased growth. *See generally* 2 R. Anderson, American Law of Zoning §§ 10.15, 10.18 (2d ed. 1976). "Municipalities should be encouraged to undertake effective planning for the

location and timing of development so as to be consistent with local capacity to maintain and expand public services such as water supply systems, sewerage facilities, roads, and police and fire protection services." Governor's Advisory Committee on New Hampshire's Future, Goals, Policies, and Recommendations for Land Use and Housing 9 (1978). *See generally* N.H. Office of Comprehensive Planning, Growth Management (1977) and The Land Book (1976).

Communities may wish to examine the feasibility of seeking greater State participation in solving what is essentially a State problem. *See* RSA 12:4 (Duties [Office of State Planning]).

Our holding that the plaintiff is entitled under RSA 36:24-a to the requested building permit makes all other issues in this case moot.

*Exceptions sustained in part; remanded.*

BROCK, J., did not sit; the others concurred.