Rockingham
No. 89-372

WAYNE BRITTON & *a.*

v.

TOWN OF CHESTER

July 24, 1991

436

*New Hampshire Legal Assistance* (*Elliott Berry* and *Thomas Fredenburg* on the brief, and *Mr. Berry* orally), for plaintiff Wayne Britton and the plaintiff class of low- and moderate-income plaintiffs.

*Craig and Wenners P.A.*, of Manchester (*James W. Craig* on the brief, and *William H. Craig* orally), for plaintiff Raymond Remillard.

*Grinnell & Bureau,* of Derry (*David R. Connell* on the brief and orally), for the defendant.

*McSwiney, Jones, Semple, Bowers & Wise P.C.*, of Concord (*James B. Kazan* on the brief), by brief for the New Hampshire Housing Finance Authority, as *amicus curiae.*

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Robert J. Finn* on the brief), by brief for the Home Builders Association of New Hampshire, as *amicus curiae.*

*Donahue, McCaffrey & Tucker,* of Exeter (*Charles F. Tucker* on the brief), by brief for the American Planning Association, as *amicus curiae.*

*H. Bernard Waugh, Jr.*, legal counsel, New Hampshire Municipal Association, by brief for the Association, as *amicus curiae.*

BATCHELDER, J.   In this appeal, the defendant, the Town of Chester (the town), challenges a ruling by the Master (*R. Peter Shapiro*, Esq.), approved by the Superior Court (*Gray*, J.), that the Chester Zoning Ordinance is invalid and unconstitutional. In addition, the town argues that the relief granted to plaintiff Remillard, permitting him to construct multi-family housing on a parcel not currently zoned for such development, violates the separation of powers provision of the New Hampshire Constitution, N.H. CONST. pt. I,

art. 37, and creates an unreasonable use for this parcel. We modify the trial court's ruling that the ordinance as a whole is invalid, but we affirm the granting of specific relief to plaintiff Remillard as well as the court's ruling that the ordinance, on the facts of this case, is unlawful as applied.

The plaintiffs brought a petition in 1985, for declaratory and injunctive relief, challenging the validity of the multi-family housing provisions of the Chester Zoning Ordinance. The master's report, filed after a hearing, contains extensive factual findings which we summarize here. The town of Chester lies in the west-central portion of Rockingham County, thirteen miles east of the city of Manchester. Primary highway access is provided by New Hampshire Routes 102 and 121. The available housing stock is principally single-family homes. There is no municipal sewer or water service, and other municipal services remain modest. The town has not encouraged industrial or commercial development; it is a "bedroom community," with the majority of its labor force commuting to Manchester. Because of its close proximity to job centers and the ready availability of vacant land, the town is projected to have among the highest growth rates in New Hampshire over the next two decades.

The United States Department of Housing and Urban Development, having settled upon the median income for non-metropolitan Rockingham County as a yardstick, has determined that a low-income family in Chester is a household with annual earnings of $16,500 or less, and a moderate-income family has annual earnings of $16,501 to $25,680. Various federal and State government agencies have also determined that low- and moderate-income families should not pay in excess of 30% of their gross income for rent. Thus, a low-income family in Chester should pay less than $4,950 annually, and a moderate-income family in Chester should pay between $4,951 and $7,704 annually, for housing.

The plaintiffs in this case are a group of low- and moderate-income people who have been unsuccessful in finding affordable, adequate housing in the town, and a builder who, the master found, is committed to the construction of such housing. At trial, two plaintiffs testified as representative members of the group of low- and moderate-income people. Plaintiff George Edwards is a woodcutter who grew up in the town. He lives in Chester with his wife and three minor children in a one-bedroom, thirty-foot by eight-foot camper trailer with no running water. Their annual income is $14,040, which places them in the low-income category. Roger McFarland grew up and works in the town. He lives in Derry with his wife and three teenage

children in a two-bedroom apartment which is too small to meet their needs. He and his wife both work, and their combined annual income is $24,000. Under the area standards, the McFarlands are a moderate-income family. Raymond Remillard is the plaintiff home builder. A long-time resident of the town, he owns an undeveloped twenty-three-acre parcel of land on Route 102 in the town's eastern section. Since 1979, he has attempted to obtain permission from the town to build a moderate-sized multi-family housing development on his land.

The zoning ordinance in effect at the beginning of this action in 1985 provided for a single-family home on a two-acre lot or a duplex on a three-acre lot, and it excluded multi-family housing from all five zoning districts in the town. In July 1986, the town amended its zoning ordinance to allow multi-family housing. Article six of the amended ordinance now permits multi-family housing as part of a "planned residential development" (PRD), a form of multi-family housing required to include a variety of housing types, such as single-family homes, duplexes, and multi-family structures.

After a hearing, the master recommended that judgment be ordered for the plaintiffs; that the town's land use ordinances, including the zoning ordinance, be ruled invalid; and that plaintiff Remillard be awarded a "builder's remedy." We will uphold the findings and rulings of a court-approved master's recommendation unless they are unsupported by the evidence or are erroneous as a matter of law. *Lake Sunapee Protective Assoc. v. N.H. Wetlands Bd.*, 133 N.H. 98, 106, 574 A.2d 1368, 1373 (1990). "The test on appeal is not whether we would have found as the master did, but whether there was evidence on which he could reasonably base his finding." *Id.* (quoting *Win-Tasch Corp. v. Town of Merrimack*, 120 N.H. 6, 9, 411 A.2d 144, 146 (1980)).

We first turn to the ordinance itself, because it does, on its face, permit the type of development that the plaintiffs argue is being prohibited. The master found, however, that the ordinance placed an unreasonable barrier to the development of affordable housing for low- and moderate-income families. Under the ordinance, PRDs are allowed on tracts of not less than twenty acres in two designated "R-2" (medium-density residential) zoning districts. Due to existing home construction and environmental considerations, such as wetlands and steep slopes, only slightly more than half of all the land in the two R-2 districts could reasonably be used for multi-family development. This constitutes only 1.73% of the land in the town. This fact

standing alone does not, in the confines of this case, give rise to an entitlement to a legal remedy for those who seek to provide multi-family housing. However, it does serve to point out that the two R-2 districts are, in reality, less likely to be developed than would appear from a reading of the ordinance. A reviewing court must read the entire ordinance in the light of these facts.

Article six of the ordinance also imposes several subjective requirements and restrictions on the developer of a PRD. Any project must first receive the approval of the town planning board as to "whether in its judgment the proposal meets the objectives and purposes set forth [in the ordinance] in which event the Administrator [*i.e.*, the planning board] may grant approval to [the] proposal subject to reasonable conditions and limitations." Consequently, the ordinance allows the planning board to control various aspects of a PRD without reference to any objective criteria. One potentially onerous section permits the planning board to "retain, at the applicant's expense, a registered professional engineer, hydrologist, and any other applicable professional to represent the [planning board] and assist the [planning board] in determining compliance with [the] ordinance and other applicable regulations." The master found such subjective review for developing multi-family housing to be a substantial disincentive to the creation of such units, because it would escalate the economic risks of developing affordable housing to the point where these projects would not be realistically feasible. In addition, we question the availability of bank financing for such projects, where the developer is required to submit a "blank check" to the planning board along with his proposal, and where to do so could halt, change the character of, or even bankrupt the project.

The defendant first argues that the trial court erred in ruling that the zoning ordinance exceeds the powers delegated to the town by the zoning enabling legislation, RSA 674:16–30. In support of this argument, the town asserts that the zoning enabling act does not require it to zone for the low-income housing needs of the region beyond its boundaries. Further, the town maintains that even if it were required to consider regional housing needs when enacting its zoning ordinance, the Chester Zoning Ordinance is valid because it provides for an adequate range of housing types. These arguments fail to persuade us of any error in the master's proposed order.

RSA 674:16 authorizes the local legislative body of any city or town to adopt or amend a zoning ordinance "[f]or the purpose of promoting the health, safety, or *the general welfare of the community*." (Emphasis added.) The defendant asserts that the term "com-

munity" as used in the statute refers only to the municipality itself and not to some broader region in which the municipality is situated. We disagree.

■ The possibility that a municipality might be obligated to consider the needs of the region outside its boundaries was addressed early on in our land use jurisprudence by the United States Supreme Court, paving the way for the term "community" to be used in the broader sense. In *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926), the Court recognized "the possibility of cases where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way." *Id.* at 390. When an ordinance will have an impact beyond the boundaries of the municipality, the welfare of the entire affected region must be considered in determining the ordinance's validity. *Associated Home Builders v. City of Livermore*, 557 P.2d 473, 487, 135 Cal. Rptr. 41, 55 (1976); *see also Berenson v. Town of New Castle*, 38 N.Y.2d 102, 110–11, 378 N.Y.S.2d 672, 681, 341 N.E.2d 236, 242–43 (1975).

■ We have previously addressed the issue of whether municipalities are required to consider regional needs when enacting zoning ordinances which control growth. In *Beck v. Town of Raymond*, 118 N.H. 793, 394 A.2d 847 (1978), we held that "[growth] controls must not be imposed simply to exclude outsiders, *see Steel Hill Dev. v. Town of Sanbornton*, [469 F.2d 956 (1st Cir. 1972)]; *Nat'l Land and Inv. Co. v. Kohn*, 419 Pa. 504, 215 A.2d 597 (1965), especially outsiders of any disadvantaged social or economic group, *see S. Burlington County N.A.A.C.P. v. Township of Mount Laurel*, 67 N.J. 151, 336 A.2d 713, *appeal dismissed*, 423 U.S. 808 (1975)." *Beck*, 118 N.H. at 801, 394 A.2d at 852. We reasoned that "each municipality [should] bear its fair share of the burden of increased growth." *Id.* Today, we pursue the logical extension of the reasoning in *Beck* and apply its rationale and high purpose to zoning regulations which wrongfully exclude persons of low- or moderate-income from the zoning municipality.

In *Beck*, this court sent a message to zoning bodies that "[t]owns may not refuse to confront the future by building a moat around themselves and pulling up the drawbridge." *Id.* The town of Chester appears willing to lower that bridge only for people who can afford a single-family home on a two-acre lot or a duplex on a three-acre lot. Others are realistically prohibited from crossing.

■ Municipalities are not isolated enclaves, far removed from the concerns of the area in which they are situated. As subdivisions of the State, they do not exist solely to serve their own residents, and their regulations should promote the general welfare, both within and without their boundaries. Therefore, we interpret the general welfare provision of the zoning enabling statute, RSA 674:16, to include the welfare of the "community," as defined in this case, in which a municipality is located and of which it forms a part.

■■ A municipality's power to zone property to promote the health, safety, and general welfare of the community is delegated to it by the State, and the municipality must, therefore, exercise this power in conformance with the enabling legislation. *Durant v. Town of Dunbarton*, 121 N.H. 352, 354, 430 A.2d 140, 142 (1981). Because the Chester Zoning Ordinance does not provide for the lawful needs of the community, in that it flies in the face of the general welfare provision of RSA 674:16 and is, therefore, at odds with the statute upon which it is grounded, we hold that, as applied to the facts of this case, the ordinance is an invalid exercise of the power delegated to the town pursuant to RSA 674:16–30. We so hold because of the master's finding that "there are no substantial and compelling reasons that would warrant the Town of Chester, through its land use ordinances, from fulfilling its obligation to provide low[-] and moderate[-] income families within the community and a proportionate share of same within its region from a realistic opportunity to obtain affordable housing."

■ The town further asserts that the trial court erred in ruling that the zoning ordinance is repugnant to the New Hampshire Constitution, part I, articles 2 and 12, and part II, article 5. In keeping with our longstanding policy against reaching a constitutional issue in a case that can be decided on other grounds, however, we do not reach the defendant's constitutional arguments. *See State v. Hodgkiss*, 132 N.H. 376, 379, 565 A.2d 1059, 1061 (1989).

■ The trial court's order declared the Chester Zoning Ordinance invalid and unconstitutional; as a result, but for this appeal, the town has been left "unzoned." To leave the town with *no* land use controls would be incompatible with the orderly development of the general community, and the court erred when it ruled the ordinance invalid. It is not, however, within the power of this court to act as a super zoning board. "Zoning is properly a legislative function, and courts are prevented by the doctrine of separation of powers from

invasion of this field." *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 58, 344 S.E.2d 272, 276 (1986). Moreover, our decision today is limited to those sections of the zoning ordinance which hinder the construction of multi-family housing units. Accordingly, we defer to the legislative body of the town, within a reasonable time period, to bring these sections of its zoning ordinance into line with the zoning enabling legislation and with this opinion. Consequently, we will temporarily allow the zoning ordinance to remain in effect.

As to the specific relief granted to plaintiff Remillard, the town contends that the court's order effectively rezones the parcel in violation of the separation of powers provision found in part I, article 37 of the New Hampshire Constitution. It further asserts that, even if it were lawful for a court to rezone or grant specific relief, plaintiff Remillard's proposed development does not qualify for such a remedy.

The master found that the requirement that multi-family housing may be built only as part of a PRD containing a variety of housing types violated plaintiff Remillard's rights under the equal protection clause of the New Hampshire Constitution, part I, article 2. The master also found that plaintiff Remillard was "unalterably committed to develop [his] tract to accommodate low[-] and moderate[-]income families." Accordingly, he granted specific relief to plaintiff Remillard, ordering that the town allow him to build his development as proposed.

██ ██ The trial court has the power, subject to our review for abuse of discretion, to order definitive relief for plaintiff Remillard. In *Soares v. Town of Atkinson*, 129 N.H. 313, 529 A.2d 867 (1987), we upheld the master's finding that granting a "builder's remedy," *i.e.*, allowing the plaintiff builder to complete his project as proposed, is discretionary. *Id.* at 316, 529 A.2d at 869. Although we there upheld the decision that such relief was inappropriate, noting that the master determined that the ordered revision of the town ordinances would permit the building of the plaintiff's project, we did not reject such relief as a proper remedy in appropriate zoning cases. *Id.* In this appeal, the master found such relief to be appropriate, and the town has not carried its burden on appeal to persuade us to the contrary. A successful plaintiff is entitled to relief which rewards his or her efforts in testing the legality of the ordinance and prevents retributive action by the municipality, such as correcting the illegality but taking pains to leave the plaintiff unbenefitted. *See Fernley v. Bd. of Sup'rs of Schuylkill Tp.*, 502 A.2d 585, 592 (Pa. 1985) (Nix,

C.J., concurring). The Pennsylvania Supreme Court reasoned in *Casey v. Zoning Board of Warwick Township*, 328 A.2d 464 (Pa. 1974), that "[t]o forsake a challenger's reasonable development plans after all the time, effort and capital invested in such a challenge is grossly inequitable." *Id.* at 469.

The master relied on *Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel*, 92 N.J. 158, 456 A.2d 390 (1983) (*Mt. Laurel II*), in determining that plaintiff Remillard was entitled to build his development as proposed. In *Mount Laurel I*, the New Jersey Supreme Court held that the municipality's zoning ordinance violated the general welfare provision of its State Constitution by not affording a realistic opportunity for the construction of its "fair share" of the present and prospective regional need for low- and moderate-income housing. *So. Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp.*, 67 N.J. 151, 174, 336 A.2d 713, 724, *appeal dismissed*, 423 U.S. 808 (1975). *Mt. Laurel II* was a return to the New Jersey Supreme Court, eight years later, prompted by the realization that *Mt. Laurel I* had not resulted in realistic housing opportunities for low- and moderate-income people, but in "paper, process, witnesses, trials and appeals." *Mt. Laurel II, supra* at 199, 456 A.2d at 410. The court noted that the "builder's remedy," which effectively grants a building permit to a plaintiff/developer, based on the development proposal, as long as other local regulations are followed, should be made more readily available to insure that low- and moderate-income housing is actually built. *Mt. Laurel II, supra* at 279, 456 A.2d at 452.

Since 1979, plaintiff Remillard has attempted to obtain permission to build a moderate-sized multi-family housing development on his land in Chester. He is committed to setting aside a minimum of ten of the forty-eight units for low- and moderate-income tenants for twenty years. "Equity will not suffer a wrong without a remedy." 2 POMEROY'S EQUITY JURISPRUDENCE § 423 (5th ed. 1941). Hence, we hold that the "builder's remedy" is appropriate in this case, both to compensate the developer who has invested substantial time and resources in pursuing this litigation, and as the most likely means of insuring that low- and moderate-income housing is actually built.

Although we determine that the "builder's remedy" is appropriate in this case, we do not adopt the *Mt. Laurel* analysis for determining whether such a remedy will be granted. Instead, we find the rule developed in *Sinclair Pipe Line Co. v. Richton Park*, 19 Ill. 2d 370, 167 N.E.2d 406 (1960), is the better rule as it eliminates the calculation of arbitrary mathematical quotas which *Mt. Laurel* re-

quires. That rule is followed with some variation by the supreme courts of several other States, *see, e.g., Schwartz v. City of Flint*, 426 Mich. 295, 329, 395 N.W.2d 678, 692–93 (1986); *Union Oil Co. v. City of Worthington*, 62 Ohio St. 2d 263, 267, 405 N.E.2d 277, 280 (1980); *Casey v. Zoning Hearing Board of Warwick Township*, 328 A.2d 464 (Pa. 1974); *City of Richmond v. Randall*, 215 Va. 506, 513, 211 S.E.2d 56, 62 (1975), and awards relief to the plaintiff builder if his development is found to be reasonable, *i.e.,* providing a realistic opportunity for the construction of low- and moderate-income housing and consistent with sound zoning concepts and environmental concerns. Once an existing zoning ordinance is found invalid in whole or in part, whether on constitutional grounds or, as here, on grounds of statutory construction and application, the court may provide relief in the form of a declaration that the plaintiff builder's proposed use is reasonable, and the municipality may not interfere with it. *Schwartz*, 426 Mich. at 329, 395 N.W.2d at 691. The plaintiff must bear the burden of proving reasonable use by a preponderance of the evidence. *Id.* Once the plaintiff's burden has been met, he will be permitted to proceed with the proposed development, provided he complies with all other applicable regulations. *See Sinclair Pipe Line Co. supra.*

■ The town's argument that the specific relief granted to plaintiff Remillard violates the separation of powers provision found in part I, article 37 of the New Hampshire Constitution, to the extent that the trial court exercised legislative power specifically delegated to the local zoning authority, is without merit. The rule we adopt today does not produce this result. *See Opinion of the Justices*, 121 N.H. 552, 556, 431 A.2d 783, 785–86 (1981) ("complete separation of powers would interfere with the efficient operation of government . . . consequently there must be some overlapping of the power of each branch"). This rule will permit the municipality to continue to control its own development, so long as it does so for the general welfare of the community. It will also accommodate the construction of low- and moderate-income housing that had been unlawfully excluded.

■ The town argues that plaintiff Remillard's proposed use of his property is not reasonable, and that the master erred in implicitly finding to the contrary, as it would be constructed atop a potential high-yield aquifer. During the hearing before the master, plaintiff Remillard's expert concluded that the proposed development would not adversely affect any aquifer, and the town's engi-

neering expert agreed. The master made a specific finding that any wells, streams, and aquifers would be protected by the project as proposed. Because we determine that the master did not abuse his discretion or err as a matter of law, we uphold his finding with respect to the reasonableness of the proposed project. *Soares*, 129 N.H. at 316, 529 A.2d at 869.

The zoning ordinance evolved as an innovative means to counter the problems of uncontrolled growth. It was never conceived to be a device to facilitate the use of governmental power to prevent access to a municipality by "outsiders of any disadvantaged social or economic group." *Beck*, 118 N.H. at 801, 394 A.2d at 852. The town of Chester has adopted a zoning ordinance which is blatantly exclusionary. This court will not condone the town's conduct.

*Affirmed in part and reversed in part.*

All concurred.