Town of Sun Prairie, Plaintiff-Appellant-Cross-Respondent-Petitioner,

v.

Gerald J. Storms, David R. Cheney, Leonard J. Linzmeier and James M. Ballweg, Defendants-Respondents-Cross-Appellants.

Supreme Court

*No. 81–912.  Argued November 29, 1982.—Decided January 5, 1983.*

(Also reported in 327 N.W.2d 642.)

For the plaintiff-petitioner there were briefs by *Trayton L. Lathrop* and *Isaksen, Lathrop, Esch, Hart & Clark,* Madison, and oral argument by *Trayton L. Lathrop.*

For the defendants-respondents there was a brief by *Francis J. Eustice* and *Aulik & Brill, S.C.,* Sun Prairie, and oral argument by *Mr. Eustice.*

BEILFUSS, C.J. This is a review of an unpublished decision of the court of appeals which affirmed the trial court's judgment declaring the petitioner's ordinance void.

On March 23, 1976, the town board of the Town of Sun Prairie adopted the following minimum lot size ordinance:

"The Town Board of the Town of Sun Prairie does ordain the minimum lot size shall be 80,000 square feet with a minimum of 200 feet road or street frontage. This ordinance conforms with chapter 236.45 of the Wisconsin Statutes subdivision regulations."

On December 19, 1979, the defendants, Gerald Storms and David R. Cheney, recorded a certified survey map which divided a parcel of land in Sun Prairie into four equal lots, each with an area of 24,975 square feet[1] and a road frontage of 150 feet. One of the lots was conveyed to the defendants, Leonard Linzmeier and James Ballweg, by a deed recorded on January 16, 1980.

On September 19, 1980, the town made a written demand on the defendants to rescind both the certified survey map and the conveyance because it violated the

[1] The town alleged in its complaint that the lots were only 24,750 square feet in area. Because the ordinance sets 80,000 square feet as the minimum lot size, this disagreement is insignificant.

ordinance. The defendants refused. Sun Prairie then commenced this action pursuant to sec. 236.31(2), Stats., to rescind and enjoin the survey map and the conveyance.[2] The defendants answered and counterclaimed.[3] The defendants affirmatively alleged that the ordinance was void because it was a zoning ordinance, not a subdivision regulation under ch. 236, Stats., and could not be adopted in the manner utilized by the town under the zoning provisions of ch. 60. The town moved for judgment on the pleadings.

The trial court held that the ordinance was void *ab initio*. The court relied on this court's decision in *State ex rel. Albert Realty Co. v. Village Board,* 7 Wis. 2d 93, 95 N.W.2d 808 (1959), and held that a town ordinance which regulates lot size is a zoning ordinance and not a subdivision platting ordinance under sec. 236.45, Stats. The court of appeals affirmed, also relying on *Albert Realty* to find that the ordinance constitutes zoning. It held that because Dane county had a comprehensive zoning ordinance the town was without the power to adopt a "zoning" ordinance without a referendum and county board approval.[4] We granted the town's petition for review.

The issue on review is whether the Town of Sun Prairie had the authority, pursuant to sec. 236.45, Stats., to adopt an ordinance regulating minimum lot size. On

[2] The complaint also alleged that the defendants had not complied with the street dedication requirements of sec. 236.34(1)(e), Stats. The trial court and the court of appeals both held that the survey map and deed must be rescinded because the strip of land designated to be dedicated for road purposes was never dedicated to the public as required by sec. 236.34. This issue is not before the court on this review.

[3] The trial court dismissed the counterclaim and amended counterclaim. The issues raised by these counterclaims are not involved in this review.

[4] *See* sec. 60.74(7), Stats.

an examination of the powers of local governments[5] to enact subdivision control regulations under ch. 236, we conclude that towns have the authority to regulate minimum lot size pursuant to sec. 236.45.

Ch. 236, Stats., regulates intensively the process by which land can be divided into building sites.[6] The purposes of ch. 236 are set forth in sec. 236.01, which provides:

"236.01 **Purpose of chapter.** The purpose of this chapter is to regulate the subdivision of land to promote public health, safety and general welfare; to further the orderly layout and use of land; to prevent the overcrowding of land; to lessen congestion in the streets and highways; to provide for adequate light and air; to facilitate adequate provision for water, sewerage and other public requirements; to provide for proper ingress and egress; and to promote proper monumenting of land subdivided and conveyancing by accurate legal description. The approvals to be obtained by the subdivider as required in this chapter shall be based on requirements designed to accomplish the aforesaid purposes."

Ch. 236, Stats., sets out the minimum requirements that are imposed on subdividers throughout the state in order to accomplish these purposes. The method of enforcement of these subdivision control requirements is through the power to approve or disapprove subdivision plans. Ch. 236 delegates the power to local government which have established planning agencies to approve subdivision plats. *Mequon v. Lake Estates Co.*, 52 Wis. 2d 765, 773, 190 N.W.2d 912 (1971). This grant of au-

[5] The term "local governments" as used in this opinion includes municipalities, towns and counties, all of which may enact subdivision ordinances pursuant to sec. 236.45, Stats. "Municipalities" is defined in ch. 236 as an incorporated city or village. Sec. 236.02(3), Stats.

[6] Introductory Commentary to ch. 236, 27 W.S.A. at 458 (1957).

thority is found in sec. 236.45.[7] Sec. 236.45 permits local government to legislate more intensively in the field of

[7] Sec. 236.45, Stats., provides:

## "SUBDIVISION REGULATION AND REGIONAL PLANS

"**236.45 Local subdivision regulation. (1)** DECLARATION OF LEGISLATIVE INTENT. The purpose of this section is to promote the public health, safety and general welfare of the community and the regulations authorized to be made are designed to lessen congestion in the streets and highways; to further the orderly layout and use of land; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements; to facilitate the further resubdivision of larger tracts into smaller parcels of land. The regulations provided for by this section shall be made with reasonable consideration, among other things, of the character of the municipality, town or county with a view of conserving the value of the buildings placed upon land, providing the best possible environment for human habitation, and for encouraging the most appropriate use of land throughout the municipality, town or county.

"**(2)** DELEGATION OF POWER. (a) To accomplish the purposes listed in sub. (1), any municipality, town or county which has established a planning agency may adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter. Such ordinances may include provisions regulating divisions of land into parcels larger than 1½ acres or divisions of land into less than 5 parcels, and may prohibit the division of land in areas where such prohibition will carry out the purposes of this section. Such ordinances may make applicable to such divisions any of the provisions of this chapter, or may provide other surveying, monumenting, mapping and approving requirements for such division. The governing body of the municipality, town or county may require that a map, plat or sketch of such division be recorded with the register of deeds and kept in a book provided for that purpose. When so recorded, the lots included in the map, plat or sketch may be described by reference to it by lot number and by volume and page of the book

subdivision control than provided for the state at large by allowing them to adopt ordinances which are more

provided for that use, for all purposes, including those of assessment, taxation, devise, descent and conveyance as defined in s. 706.01(3). Such ordinance, insofar as it may apply to divisions of less than 5 parcels, shall not apply to:

"1. Transfers of interests in land by will or pursuant to court order;

"2. Leases for a term not to exceed 10 years, mortgages or easements;

"3. The sale or exchange of parcels of land between owners of adjoining property if additional lots are not thereby created and the lots resulting are not reduced below the minimum sizes required by this chapter or other applicable laws or ordinances;

"4. Such other divisions exempted by such ordinances.

"(b) This section and any ordinance adopted pursuant thereto shall be liberally construed in favor of the municipality, town or county and shall not be deemed a limitation or repeal of any requirement or power granted or appearing in this chapter or elsewhere, relating to the subdivision of lands.

"(3) AREAS IN WHICH SUBDIVISION ORDINANCES APPLY. An ordinance adopted hereunder by a municipality may regulate the division or subdivision of land within the extraterritorial plat approval jurisdiction of the municipality as well as land within the corporate limits of the municipality if it has the right to approve or object to plats within that area under s. 236.10(1)(b)2 and (2).

"(4) PROCEDURE. Before adoption of a subdivision ordinance or any amendments thereto the governing body shall receive the recommendation of its planning agency and shall hold a public hearing thereon. Notice of the hearing shall be given by publication of a class 2 notice, under ch. 985. Any ordinance adopted shall be published in form suitable for public distribution.

"(5) REGULATION OF FEDERAL SURPLUS LAND. With respect to any surplus lands in excess of 500 acres in area, except the Bong air base in Kenosha county, sold in this state by the federal government for private development, the department, in accordance with the procedure specified in ch. 227, may regulate the subdivision or other division of such federal surplus land in any of the ways and with the same powers authorized hereunder for municipalities, towns or counties. Before promulgating such rules, the department shall first receive the recommendations of any committee appointed for that purpose by the governor."

restrictive than the provisions of ch. 236. Sec. 236.45 (2) (a).[8] Sec. 236.45 was intended by the legislature "to vest additional authority in those municipalities which had created planning commissions to impose further requirements upon the subdivider." *Jordan v. Menomonee Falls*, 28 Wis. 2d 608, 616, 137 N.W.2d 442 (1965).

This delegation of power is broad and liberally construed in favor of the local government. Sec. 236.45 (2) (b), Stats. As stated in *Mequon v. Lake Estates Co.*, 52 Wis. 2d at 774:

"The general declaration of legislative intent appearing in sec. 236.45(1) indicates that the purpose of the law is to permit a municipality to adopt regulations encouraging the most appropriate use of land throughout. Sec. 236.45(2) (b) directs that any ordinance adopted by a municipality shall be liberally construed in favor of the municipality. This reserves to the city a broad area of discretion in implementing subdivision control provided that the ordinances it adopts are in accord with the general declaration of legislative intent and are not contrary, expressly or by implication, to the standards set up by the legislature. This is a grant of wide discretion which a municipality may exercise by ordinance or appropriate resolution."

Pursuant to ch. 236, local governments are given considerable authority to direct and control land develop-

---

[8] As stated in the interpretive commentary accompanying sec. 236.45:

"Here is clear and broad enabling authority to municipalities, towns and counties which have established planning agencies to regulate the subdivision process more intensively than does chapter 236. The latter applies to all lands in the state and it is to be expected that those localities which are feeling strong pressure of rapid urban or recreational growth and development will want to legislate more intensively than the legislature has done for the state at large." 27 W.S.A. at 534.

ment within their jurisdiction. *State ex rel. Columbia Corp. v. Pacific Town Board,* 92 Wis. 2d 767, 777–78, 286 N.W.2d 130 (Ct. App. 1979).

In light of this broad grant of power we believe that the regulation of minimum lot size is one of the "further requirements" that a local government may impose on a subdivider pursuant to sec. 236.45. First, lot size regulation furthers a number of the purposes by virtue of ch. 236, Stats.: "to further the orderly layout and use of land," "to prevent the over-crowding of land," "to avoid undue concentration of population," "providing the best possible environment for human habitation," "encouraging the most appropriate use of the land," and "to provide for adequate light and air." Secs. 236.01 and 236.45(1). These legislative purposes can be met by allowing local governments to regulate minimum lot size.

Second, the provisions of ch. 236, Stats., demonstrate that minimum lot size is an appropriate area of regulation. Sec. 236.16(1) sets 6,000 square feet in area and 50 feet in width as the minimum lot size in counties having a population of 40,000 or more and a minimum area of 7,200 square feet and minimum width of 60 feet in counties of less than 40,000. This provision makes it clear that ch. 236 is concerned with minimum lot size. Further, as was discussed earlier, sec. 236.45(2)(a) provides that a local government may adopt subdivision ordinances which are more restrictive than the provisions of ch. 236. This gives towns the authority to regulate lot size more restrictively than sec. 236.16(1), as was done by the Town of Sun Prairie in this case.

Moreover, the interpretative commentary to sec. 236.16 (1) states that minimum lot size is a specific "quality" requirement that is imposed by ch. 236.[9] And the in-

[9] 27 W.S.A. at 491.

terpretative commentary to sec. 236.13 recognizes minimum lot size as an "important" requirement imposed on a subdivider.[10] This "important quality" requirement imposed by ch. 236 is one of the provisions of ch. 236 that can be more restrictively regulated by local governments pursuant to sec. 236.45.

The defendants contend that because sec. 236.16(1), Stats., specifically allows for the reduction of lot size, the failure to provide for an increase in lot size indicates that such power was not delegated. We believe this argument misconstrues sec. 236.16(1). The second sentence, on which the defendants rely, allows for *less* restrictive lot size regulations where such lots are served by public sewers. Because ch. 236 sets out the minimum standards to be imposed on subdividers, local governments have no power to enact less restrictive regulations in the absence of express authority in ch. 236. Conversely, sec. 236.45(2)(a) specifically allows local governments to enact ordinances which are *more* restrictive than the provisions of ch. 236. Thus, the second sentence in sec. 236.16(1) does not limit the grant of power in sec. 236.45.

The defendants also contend that because lot size regulation is not mentioned in the third sentence of sec. 236.45(2)(a), Stats., it is not a delegated power. They argue that only two alternatives are available to the town in adopting subdivision ordinances: they may make the provisions of ch. 236 applicable to the division or they may provide "other surveying, monumenting, mapping, and approving requirements for such division." Thus they contend that because lot size is not listed in the two alternatives, such regulation is not authorized by sec. 236.45. This argument must be rejected for two reasons. First, the grant of power to adopt an ordinance is contained in the first sentence of sec. 236.45(2)(a),

10 *Id.* at 476.

which authorizes local government to adopt more restrictive subdivision ordinances to accomplish the purposes set forth in sec. 236.45(1). This general grant of power is not restricted by the third sentence.

Second, the restrictive interpretation given to the third sentence by the defendants has been rejected by this court. In *Jordan v. Menomonee Falls*, 28 Wis. 2d at 616–17, the court found that sec. 236.45 authorized land dedication provisions even though such a regulation was not mentioned in the third sentence of sub. (2)(a), stating:

"The third sentence of this subsection reads, 'Such ordinances may make applicable to such divisions any of the provisions of this chapter, or may provide other surveying, monumenting, mapping and approving requirements for such division.' Standing alone the statutory words 'other . . . approving requirements' would normally be confined to requirements of the same general nature as the antecedent enumerated specific words' '(surveying, monumenting, mapping.' We reject such a restrictive interpretation in favor of the broader one which will encompass the objectives stated in sub. (1). We are further motivated in favor of such a broad interpretation by the direction of sub. (2)(b) requiring a liberal construction of sec. 236.45."

Lot size regulation clearly falls within the objectives of sub. (1) and thus is authorized by the statute even though not specifically mentioned in sub. (2)(a).

The defendants' final contention is that the regulation of minimum lot size is left to the zoning authorities and is not a proper subject of regulation under ch. 236. We disagree. Rather, a review of the authorities on the relationship between zoning and subdividing leads to the conclusion that "[b]oth subdivision controls and zoning ordinances may deal with minimum lot sizes." D. Hag-

man, *Urban Planning and Land Development Control Law,* sec. 136 at 250 (1971) (hornbook series).

The distinction between zoning and subdivision regulation was well stated in E.C. Yokley, *Law of Subdivisions,* sec. 39 at 157–58 (2d ed. 1981), as follows:

"Planning legislation and zoning, although sometimes considered as a single conception, do not cover identical fields of municipal endeavor. Nevertheless, statutory considerations anticipate a close relationship between planning, zoning and platting.

"Zoning and planning must be viewed as complementary devices used in community planning. Both are aimed at the orderly development of a community. Though zoning is aimed at controlling the uses of land and existing resources, subdivision regulations are designed to control the division of land and to assure that such developments thereon are designed to accommodate the needs of the occupants of the subdivision.

"Subdivision regulations should be distinguished from zoning ordinances. The purpose of zoning is to provide an overall comprehensive plan for land use, while subdivision regulations govern the planning of new streets, standards for plotting new neighborhoods, and the protection of the community from financial loss due to poor development. Thus, while zoning can prohibit certain uses of property for subdivision purposes, regulations are designed to govern the manner in which unrestricted property is developed.

"Zoning covers the immediate use of land, while planning restricts transferability and future use, and the power to regulate the subdivision of land is, like zoning, another tool for planning.

"The basic instrument for planning is the comprehensive plan, and zoning is the means of effectuating that plan. Thus, zoning is subservient to planning."

Thus, zoning and subdividing are complementary land planning devices. Subdivision control is concerned with the initial division of undeveloped land, while zoning more specifically regulates the further use of this land.

As stated by the Colorado Court of Appeals in *Shoptaugh v. County Comm.*, 37 Colo. App. 39, 543 P.2d 524 (1975) :[11]

" 'Zoning presupposes that the needs of the community have become sufficiently crystallized to permit the enactment of specific regulations. Subdivision control, on the other hand, establishes more general standards to be specifically applied by an administrative body in order to insure that the change of use will not be detrimental to the community.' "

Minimum lot size regulation is an integral part of both of these planning devices.

The defendants and the lower court's reliance on this court's decision in *State ex rel. Albert Realty v. Village Board*, 7 Wis. 2d 93, 95 N.W.2d 808 (1959), for the proposition that only the zoning authorities may regulate minimum lot size is misplaced. In *Albert* the town of Brown Deer adopted an ordinance pursuant to sec. 236.45, Stats., which restricted lot size to a minimum of 15,000 square feet. Milwaukee county had a zoning ordinance which set the minimum lot size at 10,000 square feet. The issue before the court was whether the Brown Deer ordinance was valid during an annexation contest. Under sec. 59.97(4a), Stats., 1957,[12] during an annexation contest a county zoning ordinance prevails over a local zoning ordinance. The court held the county ordinance prevailed because the Brown Deer ordinance was "in effect a zoning ordinance." 7 Wis. 2d at 97. The court examined the difference between zoning and platting, and finding no sharp distinction, held "Ordinance No. 69 is denominated an amendment to the village 'Subdivision Platting Ordinance' and, although it does affect

[11] The court quoted from Note, *Land Division Control*, 65 Harv. L. Rev. 1226 (1952).

[12] This provision is now codified at sec. 59.97(7), Stats.

platting to some extent, it also affects, and is in fact, zoning." 7 Wis. 2d at 98–99.

The court in *Albert* did not hold that only a zoning ordinance may regulate lot size. Rather, the court expressly recognized that an ordinance regulating minimum lot size has characteristics of both zoning and subdividing. In that case the court gave precedence to the zoning nature of the statute because of the need to avoid conflicting local ordinances during annexation proceedings. No such policy is present in the instant case. The *Albert* decision is therefore in accord with the authorities on land planning that both zoning and subdivision ordinances may regulate minimum lot size.

The fact that minimum lot size may also be regulated by zoning ordinances does not detract from the power of local governments to exercise such power pursuant to ch. 236, Stats. As stated in 4 Anderson, *American Law of Zoning*, sec. 23.21 at 90 (2d ed. 1977) :

"Zoning regulations and subdivision controls are not only adopted and administered by separate agencies, but are authorized by separate enabling acts which may be unlike in their requirements for enactment of regulations and their procedure for enforcement or relief. Thus, the authority of the agency assigned to plat review may not be limited by the zoning regulations."

Ch. 236, Stats., provides separate and independent enabling legislation for local governments to enact subdivision control regulations. Separate and distinct procedures are required for the adoption of such regulation as compared to zoning ordinances.[13]

As long as the regulation is authorized by and within the purposes of ch. 236, the fact that it may also fall

[13] *Compare*, secs. 236.45(6) and 60.74(1) (am) and (7), Stats., which specify the procedural requirements that towns must meet in order to adopt subdivision and zoning ordinances respectively.

under the zoning power does not preclude a local government from enacting the regulation pursuant to the conditions and procedures of ch. 236.

In summary, we conclude that minimum lot size regulation is an authorized and necessary part of subdivision control pursuant to ch. 236. Although such regulations may also be adopted pursuant to the authority to zone, they may be independently adopted pursuant to sec. 236.45. Therefore, we hold that the ordinance adopted by the Town of Sun Prairie, which restricted lot size to a minimum of 80,000 square feet in area and a minimum of 200 feet street frontage, is a valid subdivision control ordinance pursuant to sec. 236.45.

*By the Court.*—The decision of the court of appeals is reversed.