FRANK W. BERRYMAN, Corporation Counsel Iowa County
You indicate that Iowa County has enacted a comprehensive zoning ordinance and that the Town of Arena has adopted that ordinance. You also indicate that the Town of Arena has recently enacted or adopted a Land Use Guidance System. A copy of that document together with a copy of the town's land division and building code ordinances were enclosed with your request. Similar materials were furnished to this office by the town.
Initially, you inquired whether the enactment of the Land Use Guidance System, as incorporated by reference in the accompanying ordinances, impermissibly constituted the enactment of a zoning ordinance contrary to the provisions of section 60.62 (3), Stats., or the enactment of a building code contrary to the provisions of section 101.65 (1)(a), and Wis. Admin. Code § ILHR 20.02 (1)(b). Upon being advised that such an inquiry would require a section by section analysis of the provisions of each ordinance as well as a section by section analysis of the provisions of the Land Use Guidance System adopted by reference in each ordinance, you referred our office to the Iowa County Zoning Administrator, who indicated that Iowa County has two principal areas of concern. The first is whether a town may adopt driveway performance standards as town building regulations pursuant to either sections 60.22 (3) and 61.34 (1) or section101.65. The second is whether a town may set a quota on the number of residential building permits it will issue each year.
I am of the opinion that a town with village powers is not prohibited by statute from any and all regulation of driveway installation. However, I decline to decide whether the specific provisions of the town's driveway performance standards are consistent with state law in every respect. I am also of the opinion that a town *Page 61 
which is subject to a county zoning ordinance that contains no limitation on the issuance of county zoning permits may not set a quota on the number of residential building permits that the town will issue each year.
A description of the town's Land Use Guidance System is a useful starting point for analysis. In 1985, after receiving recommendations from a long range planning commission, the town enacted a land use guidance system consisting of three elements. Element I is the long-range policy plan which contains four land use planning goals: to preserve the family farm and farmland; to guide future growth of the town; to plan for the provision of necessary public services; and to protect the natural environment. The plan also contains specific policies aimed at achieving these goals. This long range policy plan was developed as the town's "master plan" pursuant to section 62.23.
Element II lists the performance standards through which the planning policies are implemented. The land division standards apply to the creation of new parcels for residential and commercial uses. They establish minimum frontage, parcel size and lot width. They also require that deed restrictions or similar notations be included on certified survey maps. The building standards for private and commercial structures restrict the issuance of permits to those that comply with the driveway and land division standards. They also provide that in any given year, the town will issue only seven residential construction permits, four of which are granted on the basis of length of land ownership, two of which are granted by drawing and one of which is reserved for farm usage. The driveway standards apply to residential, agricultural and commercial driveways, and regulate location, access, width, grade and curve radius. The building permit and driveway standards are incorporated by reference and enforced through the town building code. The land division standards are similarly enforced through the town's subdivision ordinance.
Element III sets forth the administrative procedures for reviewing and approving proposed land uses, granting variances and amending provisions of the Land Use Guidance System.
Under section 61.35, towns exercising village powers pursuant to sections 60.10 (2)(c) and 60.22 (3) may adopt a master plan. The Land Use Guidance System itself therefore creates no potential *Page 62 
conflict between jurisdictions, because a land use guidance system is simply such a master plan. Potential jurisdictional conflicts arise because the town has given certain aspects of its master plan the force of law by enacting building code and subdivision ordinances which make compliance with the Land Use Guidance System mandatory.
With respect to your first inquiry, I am not persuaded that a town with village powers is completely devoid of statutory authority to enact an ordinance concerning the installation of driveways.
Section 101.65 (1)(a) permits towns to "[e]xercise jurisdiction over the construction and inspection of new dwellings by passage of ordinances . . . ." But Wis. Admin. Code § ILHR 20.02 (5) provides: "LANDSCAPING. The scope of this code does not extend to driveways, sidewalks, landscaping and other similar features not having an impact on the dwelling structure." This provision indicates that a driveway is not a "dwelling" within the meaning of section 101.65. Therefore, town regulation of driveway installation is neither permitted nor prohibited by section101.65.
Another potential source of authority to regulate driveway installation in towns exercising village powers pursuant to sections 60.10 (2)(c) and 60.22 (3) is section 61.34 (1), which provides:
 Powers of village board. (1) GENERAL GRANT. Except as otherwise provided by law, the village board shall have the management and control of the village property, finances, highways, streets, navigable waters, and the public service, and shall have power to act for the government and good order of the village, for its commercial benefit and for the health, safety, welfare and convenience of the public, and may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language.
In Wind Point v. Halverson, 38 Wis.2d 1, 8, 155 N.W.2d 654
(1968), the Wisconsin Supreme Court noted that "[t]he dividing line between a zoning regulation and a building code regulation is not easily drawn." In that case, the court upheld a village building code regulation requiring minimum setback lines. In doing so, the court indicated that "a setback ordinance may also be adopted by a city *Page 63 
or village other than by adopting a zoning ordinance, as a building restriction or part of a building code, pursuant to the general grant of power in sec. 61.34 (1), Stats. This court has liberally construed the power of a city or village to enact building regulations pursuant to the general grant of police power . . . ." Halverson, 38 Wis.2d at 9.
I perceive no meaningful distinction under the language of the statute between a setback ordinance and an ordinance regulating driveway installation. Both appear to be permissible if enacted "for the government and good order of the [town or] village . . . [or] for the health, safety, welfare and convenience of the public . . . ." Sec. 61.34 (1), Stats.
In addition, section 236.45 (1), which authorizes towns that have established planning agencies to enact subdivision ordinances, provides as follows:
 DECLARATION OF LEGISLATIVE INTENT. The purpose of this section is to promote the public health, safety and general welfare of the community and the regulations authorized to be made are designed to lessen congestion in the streets and highways; to further the orderly layout and use of land; to secure safety from fire, panic and other dangers; to provide adequate light and air including access to sunlight for solar collectors and to wind for wind energy systems; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements; to facilitate the further resubdivision of larger tracts into smaller parcels of land. The regulations provided for by this section shall be made with reasonable consideration, among other things, of the character of the municipality, town or county with a view of conserving the value of the buildings placed upon land, providing the best possible environment for human habitation, and for encouraging the most appropriate use of land throughout the municipality, town or county.
In Town of Sun Prairie v. Storms, 110 Wis.2d 58,327 N.W.2d 642 (1983), the court upheld a town subdivision ordinance establishing an 80,000 square foot minimum lot size against a challenge that the ordinance impermissibly regulated the zoning process. In reaching this result, the court emphasized that the statutory delegation *Page 64 
of power in section 236.45 is to be liberally construed in favor of the local unit of government exercising those powers and that site considerations are an integral part of a municipality's effort to achieve its planning goals. Under Storms, it is therefore conceivable that certain requirements with respect to driveway installation may also be imposed in connection with a town's subdivision requirements.
I decline, however, to make any specific judgment as to whether the town's driveway performance standards, as incorporated by reference in the town's building code, are permissible enactments under section 61.34 (1), or as to whether some of those specific provisions could permissibly be inserted in the town's land division ordinance pursuant to section 236.45. To a certain extent, such a judgment would require a factual analysis as to how the town's ordinance operates in actual practice. An attorney general's opinion is not an appropriate vehicle for resolving such disputes. See 68 Op. Att'y Gen. 416, 421 (1979). More importantly, it is not our function to be the final arbiter of jurisdictional disputes between local units of government concerning specific ordinance provisions. Were we to start resolving such disputes, we would undoubtedly be inundated by similar requests from other counties in their disputes with towns and other local units of government.
If a case or controversy exists, the courts are available for the resolution of such disputes. Compare City of Madison v. Townof Fitchburg, 112 Wis.2d 224, 228-32, 332 N.W.2d 782 (1983). For practical reasons, my analysis is necessarily limited to the question of whether towns may lawfully exercise certain kinds of powers without infringing upon the statutory authority granted to counties. Under the circumstances, I therefore merely conclude that a town exercising village powers does not lack statutory authority to enact ordinances concerning driveway installation.
Turning to your second area of inquiry, I am also of the opinion that the town lacks statutory authority to enact an ordinance containing a quota system.
"What the ordinance is called is not as important as its nature." New Berlin v. Stein, 58 Wis.2d 417, 422, 206 N.W.2d 207
(1973). The fact that the quota system is contained in the town's building code ordinance is therefore not controlling. *Page 65 
A zoning ordinance "covers the immediate use of land . . . ."Storms, 110 Wis.2d at 68, quoting E.C. Yokley, Law ofSubdivisions, sec. 39 at 157-58 (2d ed 1981). Such quota or "slow growth" provisions are generally characterized as "exclusionary . . . zoning ordinances . . . ." Construction Ind.Ass'n, Sonoma Co. v. City of Petaluma, 522 F.2d 897, 908 (9th Cir. 1975), cert. denied, 409 U.S. 1003 (1976). See also, Villageof Belle Terre v. Boraas, 416 U.S. 1, 13-14 (1974).
Section 60.62 provides as follows:
 Zoning authority if exercising village powers. (1) Subject to subs. (2) and (3), if a town board has been granted authority to exercise village powers under s. 60.10 (2)(c), the board may adopt zoning ordinances under s. 61.35.
 (2) If the county in which the town is located has adopted a zoning ordinance under s. 59.97, the exercise of the authority under sub. (1) is subject to approval by the town meeting or by a referendum vote of the electors of the town held at the time of any regular or special election.
 (3) In counties having a county zoning ordinance, no zoning ordinance or amendment of a zoning ordinance may be adopted under this section unless approved by the county board.
In the fact situation you present, the county board has not approved the ordinance, and it therefore may not be enforced pursuant to the town's zoning powers. Under Storms and Stein, however, further analysis is required in order to ascertain whether alternate sources of statutory authority exist for the exercise of such powers. Since the town has placed these quota provisions in its building code, I first examine the limitations upon a town's ability to enact an ordinance containing a building code.
Section ILHR 20.02 of the Wisconsin Administrative Code provides, in part, as follows:
 (1) MUNICIPAL ORDINANCES. (a) No municipality shall adopt an ordinance on any subject falling within the scope of this code including, but not limited to, establishing restrictions on the occupancy of dwellings for any reason other than noncompliance with the provisions of this code as set forth in s. ILHR 20.10 (3). This code does not apply to occupancy requirements *Page 66 
occurring after the first occupancy for residential purposes following the final inspection referred to in s. ILHR 20.10 (1)(b)3.
Viewed as a building code enacted pursuant to section 101.65
(1)(a), a quota system runs afoul of this prohibition because the opportunity to build and to occupy the premises is denied for reasons totally unrelated to the criteria contained in the Uniform Dwelling Code. Since Wis. Admin. Code § ILHR 20.02 (1)(a) indicates that compliance with the uniform dwelling code is the exclusive standard to be applied under a municipality's building code, the quota system is not a valid exercise of the town's powers under section 101.65 (1)(a).
It can also be argued that, even if a quota system may not properly be enacted as part of a building code or a zoning ordinance, it can nevertheless be enacted as an exercise of the town's broad police powers under section 61.34 (1), or as an exercise of the town's subdivision power under section 236.45.
Although it grants broad authority to towns with village powers, section 61.34 (1) cannot be construed so as to authorize such towns to engage in zoning without county board approval because section 60.22 (3) precludes the exercise of "those powers which conflict with statutes relating to towns and town boards." Unless county board approval is obtained pursuant to section60.62 (3), section 61.34 (1) therefore cannot be construed to permit a town with village powers to engage in the process of zoning.
In Beck v. Town of Raymond, 118 N.H. 793, 394 A.2d 847 (1978), a town did attempt to utilize its police powers to enact a slow growth ordinance containing a quota system that permitted the issuance of at least one building permit per year to the owner of record at the commencement of each succeeding one year period. The New Hampshire Supreme Court applied the following test fromVillage House, Inc. v. Town of Loudon, 114 N.H. 76, 314 A.2d 635,636-37 (1974), to determine whether the ordinance constituted a zoning ordinance: "[T]he court must consider the nature and purpose of the regulations, their relationship if any to a general plan of development, their comprehensiveness, their effect on property values and property rights, and the situation surrounding their passage." In determining that the ordinance constituted a zoning ordinance under these criteria, the court held as follows: *Page 67 
 The ordinance establishes a definite and detailed scheme of control that substantially restricts the use of land throughout the town. The general ordinance is not an emergency measure.
. . . .
 When legislation attempts to control population growth through definite and detailed control of land development it must be enacted in accordance with the zoning statute. [Citations omitted]
 We hold that the Raymond general ordinance is so "comprehensive" as to require compliance with RSA 31:60-89, and is an invalid exercise of the police power delegated to a municipality pursuant to RSA 31:39. . . .
 We hold that the general police power delegated to a municipality pursuant to RSA 31:39 may not be used as a usual and expedient mechanism for effecting zoning regulations which would otherwise fall within the scope of RSA 31:60-89. When such ordinances become a substitute for a zoning plan, the purpose and effect of the zoning enabling legislation is defeated.
Beck, 394 A.2d at 851. The holding in Beck is equally applicable here. A slow growth ordinance therefore cannot be enacted pursuant to the authority granted a town with village powers under section 61.34 (1).
Given the Wisconsin Supreme Court's holding in Storms, the question is somewhat closer with respect to the town's exercise of its subdivision powers under section 236.45. Nevertheless, a town may not use its subdivision powers as a subterfuge for enacting what would otherwise be an invalid zoning ordinance. InRayco Inv. Corp. v. Board of Selectmen of Raynham, 368 Mass. 385,331 N.E.2d 910 (Mass. 1975), the Town of Raynham enacted a subdivision ordinance prohibiting the issuance of any additional permits to trailer parks. While acknowledging that trailer parks are subject to regulation under a town's police powers, the Massachusetts Supreme Court nevertheless concluded that the ordinance was, in fact, a zoning ordinance rather than a subdivision ordinance:
 A further consideration which leads us to this conclusion is that were we to adopt the defendants' theory the assorted protections contained in the Zoning Enabling Act could in many instances be circumvented, thereby defeating the purpose of the *Page 68 
statute. For example, just as the town purports to limit the number of mobile home parks within its borders under its police power, so another town might want to limit the number of apartment buildings in the town, perhaps as a health regulation to protect the town's water supply or sanitation facilities. Under the theory advanced by the defendants, the latter measure could be viewed as outside the scope of the Zoning Enabling Act if not adopted strictly as a zoning regulation. The problem with this approach is that it views the municipal police power in a vacuum, whereas the law is clear that a municipality's "independent police powers . . . cannot be exercised in a manner which frustrates the purpose or implementation of a general or special law enacted by the Legislature . . . .
Rayco, 331 N.E.2d at 915.
Cases such as Beck and Rayco indicate that the question of whether a particular enactment constitutes a zoning ordinance is often a matter of degree. The more comprehensive the ordinance, the more likely it will be characterized by a court as a zoning ordinance. A quota system which virtually precludes all forms of building is far broader in scope than either of the ordinances enacted in Rayco and Beck. Since such an ordinance constitutes a pervasive regulation of, and in many instances a prohibition on the use of, land, I therefore conclude that such an ordinance is a zoning ordinance which requires county board approval.
DJH:FTC *Page 69