WISCONSIN REALTORS ASSOCIATION, INC. and
Wisconsin Builders Association,
Plaintiffs-Appellants,†

v.

TOWN OF WEST POINT, Defendant-Respondent.

Court of Appeals

*No. 2006AP2761. Submitted on briefs April 16, 2007.
—Decided February 28, 2008.*

2008 WI App 40

(Also reported in 747 N.W.2d 681.)

† Petition to review denied, without costs 9/23/08.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Timothy D. Fenner* and *Lori M. Lubinsky* of *Axley Brynelson, LLP*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Richard K. Nordeng* and *Bryan Kleinmaier* of *Stafford Rosenbaum LLP*, Madison.

Nonparty briefs were filed by *Brian W. Ohm* for Wisconsin Chapter of the American Planning Association.

Nonparty briefs were filed by *Daniel M. Olson* for League of Wisconsin Municipalities.

Nonparty briefs were filed by *Carol B. Nawrocki* for Wisconsin Towns Association.

A nonparty brief was filed by *William F. White* and *Paul D. Barbato* of *Michael Best & Friedrich LLP*, Madison, for Wisconsin Transportation Builders Association and Aggregate Producers of Wisconsin.

Before Higginbotham, P.J., Lundsten and Bridge JJ.

¶ 1. LUNDSTEN, J. Local governments have power to regulate land division under WIS. STAT. § 236.45 (2005–06).[1] The question presented is whether this statute grants the Town of West Point the authority to temporarily prohibit land division in the entire Town while it develops a comprehensive plan under WIS. STAT. § 66.1001. We, like the circuit court, conclude that the Town has the authority under § 236.45(2) to impose a temporary town-wide prohibition on land division while developing a comprehensive plan. Accordingly, we affirm the circuit court's judgment upholding the Town's temporary town-wide prohibition on land division.[2]

### Background

¶ 2. In September 2005, the Town of West Point adopted an ordinance establishing, with limited exceptions, a town-wide "temporary stay or moratorium on

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] We certified this case to the supreme court. The court accepted certification, but split 3–3 on whether to affirm or reverse the circuit court. *Wisconsin Realtors Ass'n v. Town of West Point*, 2007 WI 139, ¶¶ 1–2, 306 Wis. 2d 42, 743 N.W.2d 441. Accordingly, the supreme court remanded the case to this court. *Id.*, ¶¶ 3–4. Our references to the parties' arguments are drawn from briefing submitted to the supreme court and oral argument held before that court.

the acceptance, review, and approval . . . of any applications for a land division or subdivision." The Town enacted the ordinance because it was engaged in developing a "comprehensive plan" under WIS. STAT. § 66.1001, Wisconsin's "smart growth" statute. The introductory language to the ordinance declared that the ordinance would

> provide the Town with an opportunity to stabilize growth to continue the planning process, including completing the land use element, and such stay will eliminate development pressures within the Town which would otherwise increase during the planning process because landowners and developers might seek to rush their projects in order to gain approval before the planning process can be further completed by the Town.
>
> A temporary stay will allow the Town sufficient time to implement additional new elements, including the land use element, by amending existing or creating new Ordinances, if necessary.

¶ 3. While this temporary prohibition on land division was in effect, the Wisconsin Realtors Association and the Wisconsin Builders Association sued the Town, seeking a declaration that the prohibition was illegal and enjoining the Town from enforcing it. The Associations moved for summary judgment. In deciding that motion, the circuit court adopted the Town's view that the prohibition ordinance was authorized by WIS. STAT. § 236.45(2). The court, therefore, granted summary judgment in favor of the Town. The Associations appeal.

### Discussion

¶ 4. The question presented is whether WIS. STAT. § 236.45(2) grants a qualifying "municipality, town or county" the authority to temporarily prohibit land

division while such local government develops a comprehensive plan under Wis. Stat. § 66.1001. It is undisputed that the Town of West Point is a qualifying town within the meaning of § 236.45(2).[3] Also, although § 236.45 covers qualifying municipalities, towns, and counties, in the remainder of this opinion we refer only to towns for ease of discussion.

¶ 5. The pertinent facts are undisputed and, therefore, the interpretation and application of § 236.45(2) to these facts is a question of law that we review *de novo*. *See Wood v. City of Madison*, 2003 WI 24, ¶ 11, 260 Wis. 2d 71, 659 N.W.2d 31. We give statutory language its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We must construe a statute in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably, to avoid absurd or unreasonable results. *Id.*, ¶ 46.

¶ 6. The Town argues that § 236.45(2) expressly authorizes a temporary town-wide prohibition on land division if the prohibition carries out specified statutory purposes. The key language in the statute authorizes towns to "prohibit the division of land in areas where such prohibition will carry out the purposes [listed in

---

[3] A "municipality, town or county" may enact land division ordinances under Wis. Stat. § 236.45, provided it has established a planning agency. *See* § 236.45(2); *Town of Sun Prairie v. Storms*, 110 Wis. 2d 58, 61 & n.5, 327 N.W.2d 642 (1983). The Town of West Point has established the required "planning agency" and, therefore, is a qualifying town.

sub. (1) of § 236.45]."⁴ Wɪs. Sᴛᴀᴛ. § 236.45(2). The purposes listed in subsection (1) pertain to land use, planning, and development. They include lessening congestion in the streets; furthering the orderly layout and use of land; preventing the overcrowding of land; avoiding undue concentration of population; facilitating the provision of schools, parks, and playgrounds; and facilitating further resubdivision.⁵

¶ 7. The purposes listed in § 236.45(1) substantially overlap with the purposes behind comprehensive plans under § 66.1001. Comprehensive plans, like the purposes set forth in § 236.45(1), are concerned with land use, planning, and development. Section 66.1001

---

⁴ Section 236.45(2) reads more fully, in part:

To accomplish the purposes listed in sub. (1), any municipality, town or county which has established a planning agency may adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter. Such ordinances may include provisions regulating divisions of land into parcels larger than 1 1/2 acres or divisions of land into less than 5 parcels, and may prohibit the division of land in areas where such prohibition will carry out the purposes of this section. Such ordinances shall make applicable to such divisions all of the provisions of this chapter, or may provide other surveying, monumenting, mapping and approving requirements for such division.

⁵ Section 236.45(1) reads, in relevant part:

Dᴇᴄʟᴀʀᴀᴛɪᴏɴ ᴏғ ʟᴇɢɪsʟᴀᴛɪᴠᴇ ɪɴᴛᴇɴᴛ. The purpose of this section is to promote the public health, safety and general welfare of the community and the regulations authorized to be made are designed to lessen congestion in the streets and highways; to further the orderly layout and use of land; to secure safety from fire, panic and other dangers; to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements; to facilitate the further resubdivision of larger tracts into smaller parcels of land.

provides that comprehensive plans must contain various "elements," including a "land use element," a "housing element," a "transportation element," and an "agricultural, natural and cultural resources element." *See* § 66.1001(2).

¶ 8. Because § 236.45(2) authorizes town ordinances prohibiting the division of land when the prohibition carries out purposes specified in § 236.45(1), and comprehensive plans under § 66.1001 promote purposes listed in § 236.45(1), it follows that a temporary town-wide prohibition on land division that advances the interests of a comprehensive plan, by prohibiting a development rush just prior to adoption of the plan, is authorized by § 236.45(2).

¶ 9. The Associations do not dispute the Town's assertion that its ordinance furthers purposes specified in § 236.45(1) precisely because it delays new land division until the completion of the Town's comprehensive plan.[6] For example, the Associations do not contest

---

[6] The Town argues that its temporary prohibition furthers the § 236.45(1) purposes of lessening congestion in the streets and highways, furthering the orderly layout and use of land, preventing the overcrowding of land, and avoiding undue concentration of population. We find no contention, either in the Associations' briefs or oral argument, that the ordinance is defective because it fails to sufficiently carry out purposes specified in § 236.45(1).

We also note that the declaration of legislative intent in § 236.45(1) not only lists the statute's purposes, but also mandates that any regulation under the statute must take into "reasonable consideration . . . the character of the municipality, town or county with a view of conserving the value of the buildings placed upon land, providing the best possible environment for human habitation, and for encouraging the most appropriate use of land throughout the municipality, town or

205

the assertion that the prohibition furthers the purpose of the orderly layout and use of land or that the duration of the prohibition is no longer than necessary to further that purpose. Still, the Associations challenge the ordinance based on the following arguments:

1. Section 236.45(2) does not authorize a town-wide prohibition on land division because that statute authorizes prohibitions only "in areas," not in all areas of a municipality.

2. The ordinance fails to comply with § 236.45(2)'s requirement that such ordinances "make applicable . . . all of the provisions of [ch. 236]."

3. Reading § 236.45(2) as permitting town-wide prohibitions on land division renders meaningless the legislature's express grant of authority to "enact an interim zoning ordinance to preserve existing uses while the comprehensive zoning plan is being prepared," under Wis. Stat. § 62.23(7)(da).

We address and reject each argument in the sections that follow.

### 1. "In Areas"

¶ 10. Section 236.45(2) authorizes ordinances prohibiting land division "*in areas* where such prohibition will carry out the purposes of this section" (emphasis added). The Town argued successfully below that "in areas" may include an entire town if inclusion of the entire town will carry out the specified purposes.

---

county." Wis. Stat. § 236.45(1). Here, the Town's temporary prohibition plainly took into account these types of considerations because it was designed to facilitate the Town's comprehensive plan.

¶ 11. The Associations contend that the Town's reading has to be incorrect because it renders the phrase "in areas" surplusage. This is true, the Associations argue, because if the phrase "in areas" is deleted from the clause, the resulting clause has the meaning advanced by the Town. That is, a clause reading "may prohibit the division of land . . . where such prohibition will carry out the purposes of this section" would permit prohibition on land division "where" the prohibition would carry out the purposes, be that a part of a town or the whole town. Therefore, according to the Associations, the phrase "in areas" must add some meaning to the clause and that meaning is a limitation permitting prohibitions in some areas of a town, but not in all areas of a town.

¶ 12. We agree with the Associations that the Town's reading of the clause renders the phrase "in areas" superfluous. We do not agree, however, that "in areas" must be interpreted as adding meaning to the clause.

¶ 13. "While terms of a statute are to be interpreted to avoid superfluousness if possible, that is only one rule of statutory construction. It is not absolute. The purpose of all rules of statutory construction is to give effect to the legislative intent." *Novak v. Madison Motel Assocs.*, 188 Wis. 2d 407, 414, 525 N.W.2d 123 (Ct. App. 1994). For example, in *Wood County v. Board of Vocational, Technical & Adult Education*, 60 Wis. 2d 606, 211 N.W.2d 617 (1973), Wood County argued that, if the court construed a subparagraph in a statute as conferring the same approval authority as conferred in a second subparagraph, the first subparagraph would be rendered superfluous. *Id.* at 614–15. The court explained, however, that "[e]ven if [the second subpara-

graph] can be considered complete in itself and therefore [the first subparagraph] is superfluous, this court can only attempt to construe a statute so that all parts have a function and meaning. If the legislature has created redundancies, it is not up to this court to create functions for such parts." *Id.* at 615.

¶ 14. The teaching of cases such as *Novak* and *Wood County* is that our legislature sometimes uses more words than necessary without intending to add meaning. In a nutshell, that is the situation here because the only possible added meaning—the one suggested by the Associations—is not reasonable. If a temporary town-wide prohibition on land division *is needed* to further the purposes listed in § 236.45(1), then the legislature's express intent to permit a prohibition "in areas where such prohibition will carry out the [specified] purposes" is thwarted. In that event, an area that should be included in a prohibition to carry out the listed purposes would, absurdly, need to be excluded in order to comply with the "in areas" language. The notion that a town would need to arbitrarily exclude some small area in order to comply with the statute, even though inclusion of that small area carries out the specified purposes, is not reasonable.

¶ 15. Moreover, we observe that the "in areas" limitation argued by the Associations is not much of a limitation. Logically extended, the Associations' interpretation authorizes a prohibition on land division in areas covering anything less than a whole town if the prohibition carries out the specified purposes. Significantly, the Associations suggest no reason why the phrase "in areas" should be construed to limit the size of areas where a prohibition may be imposed. Rather, the Associations' construction of the clause contains only two limitations on prohibitions: (1) that the area or

208

areas be less than a whole town and (2) that the prohibition carry out the specified purposes. Thus, under the Associations' own construction, a town could enact a prohibition that applied to all areas of the town, except a few parcels owned by the town, if the prohibition carries out the specified purposes.

¶ 16. To take a different example, the Associations' interpretation of "in areas" would not prevent a town from identifying areas that are unsuitable for further subdivision, such as established residential areas, and temporarily prohibiting land division in the remaining areas of the town, thereby effectively prohibiting land division in all areas.

¶ 17. When asked at oral argument whether a prohibition covering 99.9% of a town would be permissible, the Associations' counsel responded "no," but by way of support counsel merely went on to say that a lawful prohibition area must be justified by the purposes of the statute. Counsel did not, and we think could not, explain why, even under the Associations' view, a prohibition covering 99.9% of a town would be impermissible if inclusion of that area carries out statutory purposes.

¶ 18. We also observe that there is a limitation that prevents towns from halting development permanently under some false pretense. That limitation is the requirement that prohibitions must carry out the statutorily specified purposes, which necessarily means that the prohibition must do so both in terms of the area *and the duration.* The Town has conceded that a town-wide prohibition significantly longer than the one here—two years—would not comport with the purposes of the statute.

¶ 19. Our analysis leads us to reject the Associations' argument, first made in their reply brief, that

interpreting § 236.45(2) as authorizing a town-wide prohibition leads to absurd results because it would facilitate "border wars" by permitting adjoining cities and villages the authority to "freeze land divisions within the area of the Town that is subject to the city or village extraterritorial plat approval jurisdiction." This argument is not persuasive because the "in areas" interpretation urged by the Associations would be wholly ineffective in preventing such conflicts. If a town is determined to interfere with development, it could attempt to achieve that result, regardless of the Associations' proposed "in areas" limitation, by prohibiting land division in strategically chosen areas of possible interest to developers and adjoining municipalities.[7]

¶ 20. Finally, we address a statutory history argument presented at oral argument by the Associations and made more fully in an amicus brief submitted by the Transportation Builders Association and Aggregate Producers of Wisconsin. Before a 1955 revision, § 236.45(2)—then numbered WIS. STAT. § 236.143(2)— referred to prohibitions on land division in "specific areas." The predecessor language read, in pertinent part: "The municipal governing body may by ordinance regulate, restrict, and in specific areas prohibit the division or subdivision of land . . . ." WIS. STAT.

_____

[7] We have chosen to address the merits of the Associations' belated "border wars" argument in the absence of a response from the Town. Nonetheless, we note that the argument is undeveloped legally (the Associations do not explain the legal context that enables such "border wars" or how, legally, temporary town-wide prohibitions on land division would facilitate more "border wars") and unsupported factually (the Associations do not point to evidence in the record demonstrating that such "border wars" are a problem or that such temporary prohibitions would make a difference).

§ 236.143(2) (1953). A legislative note accompanying the 1955 revision of this language reads: "This [revised] section is *very similar* to the present § 236.143, except that it clearly spells out the power of the local unit of government to regulate divisions of land into less than 5 parcels and into parcels larger than 1–1/2 acres." 1955 Wis. Laws, ch. 570, Legislative Note to § 236.45, at 3 (emphasis added). This note, according to the Associations and amicus, suggests that the legislature intended no substantive change and that the power to prohibit land division remains limited to *specific* areas. The legislative note, however, does not go that far. It does say that the new section is "very similar" to the prior section, but that statement merely begs the question whether the previous and current versions of the statute are "very similar" in the ways that matter here. The previous and current versions are plainly *not* "very similar" in at least two relevant respects. First, the previous version of the statute did not, as the statute does now, expressly require that any prohibition on land division carry out the purposes of the statute. This change directly bears on the question at issue here because it provides a limitation on the reach of the "areas" in which a town may impose a prohibition. Second, the previous version did not, as the statute does now, expressly state that local governments may "adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter." As the supreme court explained in 1965, "Sec. 236.45 was revised so as to permit those localities which are feeling strong pressure of rapid urban growth and development, to legislate more intensively in the field of subdivision control . . . ." *Jordan v. Village of Menomonee Falls*, 28 Wis. 2d 608, 613, 137 N.W.2d 442 (1965); *see also Wood*, 260 Wis. 2d 71, ¶ 16;

211

*Town of Sun Prairie v. Storms*, 110 Wis. 2d 58, 61 & n.6, 327 N.W.2d 642 (1983); *City of Mequon v. Lake Estates Co.*, 52 Wis. 2d 765, 774, 190 N.W.2d 912 (1971). We also ask the obvious: Why would the legislature eliminate the word "specific" if no change was intended to "specific areas"? The Associations and amicus do not offer an explanation.

¶ 21. The reasoning we employ above assumes that the inclusion of the modifier "specific" somehow makes it clearer that the term "areas" in the statute does not include an entire town. For purposes of rejecting the statutory history argument, we accept that assumption for argument's sake. Still, we question the assumption. If a prohibition specifies all areas of a town, that designation is specific. The areas are precisely and unambiguously defined. As is pertinent here, "specific" is commonly defined as "characterized by precise formulation or accurate restriction (as in stating, describing, defining, reserving) : free from such ambiguity as results from careless lack of precision or from omission of pertinent matter." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2187 (unabr. ed. 1993). And, if inclusion of all areas carries out the listed purposes in the statute, it is not apparent why the analysis used in ¶¶ 12–19 above does not apply equally to the phrase "specific areas."

¶ 22. Accordingly, we agree with the Town that the only limitation the legislature put on prohibitions on land division under § 236.45(2) is that the areas covered by the prohibition further the purposes of the statute.

### 2. "Make Applicable"

¶ 23. The Associations argue that the Town's temporary prohibition was invalid because the ordinance enacting the prohibition failed to "make applicable" all

provisions of WIS. STAT. ch. 236, as required by § 236.45(2). The Associations' "make applicable" argument is based on the italicized portion of the following language in § 236.45(2):

Such ordinances *shall make applicable* to such divisions *all of the provisions of this chapter,* or may provide other surveying, monumenting, mapping and approving requirements for such division.

(Emphasis added.) The Associations point out that the provisions of ch. 236 include procedures for plat application acceptance and review, including the requirements that towns must accept the filing of any plat application, that towns must distribute plat applications to the appropriate entities for review, and that those entities must review the applications and approve or reject them. *See* WIS. STAT. §§ 236.10 to 236.13. The Associations argue that the Town's temporary prohibition conflicts with this "make applicable" provision because the prohibition precludes the Town from accepting or reviewing plats.

¶ 24. We are unable to reconcile the Associations' "make applicable" argument with its concession that § 236.45(2) *does* permit some land-division prohibitions. Are the Associations arguing that, when local governments impose proper prohibitions on land division, they must waste time and resources reviewing and distributing to other entities plat applications that on their face must be rejected? This is an unreasonable interpretation of the statute.

¶ 25. The Town provides a reasonable interpretation of the "make applicable" provision. The Town contends that the language, "[s]uch ordinances shall make applicable *to such divisions* all of the provisions of this chapter," is sensibly read as being directed at

213

ordinances regulating permissible divisions, not at ordinances that unmistakably *prohibit* divisions.

¶ 26. Therefore, we reject the Associations' argument that the Town ordinance imposing the temporary prohibition was invalid because it failed to "make applicable" all provisions in ch. 236.

### 3. Zoning Freeze Power Under
### WIS. STAT. § 62.23(7)(da)

¶ 27. The Associations argue that reading § 236.45(2) as permitting town-wide prohibitions on land division renders meaningless the legislature's express grant of authority, in WIS. STAT. § 62.23(7)(da), to "enact an interim zoning ordinance to preserve existing uses while the comprehensive zoning plan is being prepared." In a closely related argument, the Associations seem to be saying that the legislature's clear grant of temporary zoning freeze power in § 62.23(7)(da) indicates that the legislature did not intend that towns have the equivalent power under § 236.45(2) to enact temporary town-wide prohibitions on land division. We disagree with both arguments.

¶ 28. First, the Associations' arguments presuppose that § 236.45(2) is ambiguous as to whether it authorizes town-wide prohibitions on land division. If, however, this grant of authority is unambiguous, it is specific to the situation at hand and, therefore, controlling. *See State v. Galvan*, 2007 WI App 173, ¶ 7, 304 Wis. 2d 466, 736 N.W.2d 890 (when two statutes relate to the same subject matter, the more specific statute is generally controlling), *review denied*, 2007 WI 134, 305 Wis. 2d 129, 742 N.W.2d 527 (No. 2006AP2052-CR). As we have seen, there is no ambiguity.

¶ 29. Second, the Associations fail to explain why the Town's interpretation of § 236.45(2) renders *zoning*

freeze power in § 62.23(7)(da) meaningless. Section 62.23(7)(da) grants cities the power to impose an "interim" freeze preserving existing zoning. The statute provides, in relevant part:

> *Interim zoning.* The common council of any city which has not adopted a zoning ordinance may ... enact an interim zoning ordinance to preserve existing uses while the comprehensive zoning plan is being prepared. Such ordinance may be enacted as is an ordinary ordinance but shall be effective for no longer than 2 years after its enactment.

Wis. Stat. § 62.23(7)(da). The Associations assert that, if the legislature intended towns to possess the authority that cities have to "preserve the status quo" under § 62.23(7)(da), the legislature would have included towns in that statute. The Associations argue that the legislature's "failure to include within a town's power the authority to enact an interim zoning [freeze] ordinance to preserve the status quo signifies the legislature's intent to preclude towns from having this power."

¶ 30. The Associations' argument, referring to the power to "preserve the status quo," is fatally imprecise. Sections 62.23(7) and 236.45 deal with different powers. Section 62.23(7)(da) addresses city *zoning* power to "preserve existing uses"—it does not authorize a prohibition on land divisions. Indeed, the Associations do not suggest that § 62.23(7)(da) authorizes a prohibition on land divisions by authorizing cities to "preserve existing uses."

¶ 31. We acknowledge that land developers seeking land division often need rezoning to accomplish their development goals. As a practical matter, a freeze on zoning can render the ability to seek land division meaningless, and vice versa. The reason, however, is not that zoning and land division are the same; the reason is that these two distinct powers interact. *See Wood*, 260

215

Wis. 2d 71, ¶ 29 ("The court . . . [has] recognized an overlap between zoning and platting when plat approval imposes 'quality' requirements."); *see also Storms*, 110 Wis. 2d at 68 ("[Z]oning and subdividing are complementary land planning devices.").

¶ 32. Accordingly, the legislative grant of city interim zoning power to "preserve existing uses" under § 62.23(7)(da) does not defeat the Town's argument that § 236.45(2) authorizes temporary town-wide prohibitions on land division.[8]

### *Conclusion*

¶ 33. In sum, we conclude that the Town had authority under WIS. STAT. § 236.45(2) to impose a temporary town-wide prohibition on land division while developing its comprehensive plan. Accordingly, we affirm the circuit court.

*By the Court.*—Judgment affirmed.

---

[8] The Town suggests that we rely on WIS. STAT. § 62.23(7), which states: "This subsection may not be deemed a limitation of any power granted elsewhere." According to the Town, "power granted elsewhere" includes the powers granted local governments in WIS. STAT. ch. 236 and, more specifically, the power granted in § 236.45(2). We find it unnecessary to address that argument. Similarly, we need not address either the Town's police powers argument or its argument that the Associations lack standing because they did not submit plat applications that were rejected during the prohibition time period. The latter issue was raised before the circuit court, but not on appeal. Also, because we conclude that the Town had authority under § 236.45 to enact its temporary prohibition, we do not address the Associations' argument that the Town lacks authority to enact its prohibition under WIS. STAT. §§ 60.61 to 60.66.